[No. D035507. Fourth Dist., Div. One. Jan. 16, 2002.]

THOMAS J. LYNCH, JR., Plaintiff and Appellant, v.
THOMAS J. WARWICK, JR., Defendant and Respondent.

---

**COUNSEL**

Thomas J. Lynch, Jr., in pro. per.; and James Byrnes for Plaintiff and Appellant.

Kennerson Schwartz Semerdjian & Haile, Dick A. Semerdjian and James R. Ballard for Defendant and Respondent.

---

**OPINION**

**KREMER, P. J.**—Thomas J. Lynch, Jr. appeals a summary judgment and order denying his motion to vacate the judgment on his action for legal malpractice, breach of contract and breach of fiduciary duty against his former criminal defense attorney, Thomas J. Warwick, Jr. Lynch contends the trial court erred in finding that he was required to establish his actual innocence of the underlying criminal charges in order to pursue his claims against Warwick. We affirm.

FACTS

In July 1995 Lynch retained Warwick to represent him in several criminal matters, paying Warwick a fee of $17,500. The day before Lynch's trial, Warwick advised Lynch to plead guilty. Lynch insisted on going to trial, retained new counsel the next day at a cost of $20,000, and obtained a continuance of the trial date. Ultimately, upon the advice of the second attorney, Lynch pleaded guilty to charges of kidnapping and assault with a deadly weapon.

In 1998 Lynch filed a complaint against Warwick containing causes of action for legal malpractice, breach of contract and breach of fiduciary duty.

As amended, the causes of action were based on Warwick's alleged failure to perform the professional services for which he was retained. Lynch alleged that Warwick failed to interview key witnesses, unnecessarily sought continuances, failed to prevent the loss or destruction of evidence, failed to develop a working relationship of trust and confidence with him, and failed to adequately communicate with him about the case.

As damages, Lynch sought in his negligence cause of action to recover the amount of money he had paid to the second retained attorney; in his breach of contract action, sought to recover the $17,500 he had paid to Warwick; and in his breach of fiduciary duty cause of action, sought general and punitive damages.

Warwick moved for summary judgment on the ground that Lynch had failed to establish negligence by failing to designate an expert witness and on the ground Lynch failed to establish his actual innocence of the criminal charges. The court granted summary judgment on Lynch's failure to establish actual innocence and denied Lynch's subsequent motions for reconsideration and to vacate the judgment.

## DISCUSSION

■■■ Lynch argues the actual innocence requirement for a legal malpractice suit against a former criminal defense attorney does not apply here because he is seeking out-of-pocket expenses unrelated to guilt or innocence.[1]

■■■ Generally, the elements of a legal malpractice action are: "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 [108 Cal.Rptr.2d 471, 25 P.3d 670].) In a legal malpractice case arising out of a criminal proceeding, California, like most jurisdictions, also requires, as a "necessary element," proof of actual innocence. (*Id.* at pp. 1197, 1200; *Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 545 [79 Cal.Rptr.2d 672, 966 P.2d 983] (*Wiley*).) The actual innocence requirement "applies to legal malpractice claims asserted against both private attorneys and public defenders." (*Barner v. Leeds* (2000) 24 Cal.4th 676, 679 [102 Cal.Rptr.2d 97, 13 P.3d 704].)

---

[1] Lynch's complaint lists three causes of action—negligence, breach of contract, and breach of fiduciary duty. All three causes of action seek damages (attorney fees paid either to Warwick or to the attorney hired to replace Warwick) based on Warwick's negligent or inadequate representation and, thus, while titled differently, all three causes of action seek recovery for legal malpractice.

In *Wiley*, the Supreme Court explained the actual innocence requirement was justified by policies against allowing an individual " ' "to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime." ' " (*Wiley, supra,* 19 Cal.4th 532, 537.) The *Wiley* court observed that " 'allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict.' " (*Ibid.*) *Wiley* made it clear that "[o]nly an innocent person wrongly convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss." (*Id.* at p. 539.) The *Wiley* court further explained: " 'The guilty criminal may be able to obtain an acquittal if he is skillfully represented, but he has no right to that result (just as he has no *right* to have the jury nullify the law, though juries sometimes do that), and the law provides no relief if the "right" is denied him.' [Citation.] Moreover, '[t]he underpinnings of common law tort liability, compensation and deterrence, do not support a rule that allows recovery to one who is guilty of the underlying criminal charge. A person who is guilty need not be compensated for what happened to him as a result of his former attorney's negligence. There is no reason to compensate such a person, rewarding him indirectly for his crime.' " (*Id.,* at pp. 543-544.)

The *Wiley* court's actual innocence requirement also rested on key differences between civil and criminal actions. The court observed that, unlike a criminal case where the defendant has recourse to postconviction relief, "a civil matter lost through an attorney's negligence is lost forever" and the civil litigant, unlike the criminal defendant, "has no recourse other than a malpractice claim." (*Wiley, supra,* 19 Cal.4th 532, 543.) The Wiley court further noted:

"Reinforcing this conclusion [that a criminal malpractice action requires a showing of actual innocence] are the pragmatic difficulties that would arise from simply overlaying criminal malpractice actions with the civil malpractice template. In civil actions, carrying the burden on causation is relatively straightforward and comprehensible for the jury, even if it necessitates a 'trial within a trial.' The factual issues in the underlying action are resolved according to the same burden of proof, and the same evidentiary rules apply. Thus, it is reasonably possible for the malpractice jury to assess whether and to what extent counsel's professional lapse compromised a meritorious claim or defense. [Citation.]

"By contrast, 'the prospect of retrying a criminal prosecution [is] "something one would not contemplate with equanimity . . . ." ' [Citations.] The

procedure outlined in *Shaw* v. *State, Dept. of Admin.* [(Alaska 1993)] 861 P.2d [566,] 573, suggests this estimation is not exaggerated: '[T]he standard of proof will be a complex one, in essence, a standard within a standard. [Plaintiff] must prove by a preponderance of the evidence that, but for the negligence of his attorney, the jury could not have found him guilty beyond a reasonable doubt.' [Citations.] Moreover, while the plaintiff would be limited to evidence admissible in the criminal trial, the defendant attorney could introduce additional evidence, including 'any and all confidential communications, as well as otherwise suppressible evidence of factual guilt.' [Citations.] The mental gymnastics required to reach an intelligent verdict would be difficult to comprehend much less execute. [Citations.] Avoiding such a procedure is also consistent with ' "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." [Citation.]' " (*Wiley, supra,* 19 Cal.4th at p. 544.)

Finally, the *Wiley* court observed: "Tort damages are in most cases fungible in the sense that the plaintiff seeks in a malpractice action exactly what was lost through counsel's negligence: money. 'Damages' in criminal malpractice are difficult to quantify under any circumstances. Calculating them when, for example, counsel's incompetence causes a longer sentence would be all the more perplexing." (*Wiley, supra,* 19 Cal.4th 532, 543.)

▉▉▉ Lynch claims that *Wiley* is distinguishable because "guilt or innocence is not relevant to the instant matter," he is not suing for being wrongfully convicted or receiving a longer sentence (as was at issue in *Wiley* and the cases upon which *Wiley* relied), and Warwick was not his attorney when he pleaded guilty. We are unpersuaded.

Lynch's guilt or innocence is relevant in this case. Lynch's claims rest on the assertion that he had meritorious defenses, that had Warwick "exercised proper care, skill and diligence," Lynch "would have received a proper or reasonable defense with respect to the underlying criminal charges," and Lynch would not have been "forced to fire [Warwick] and retain other legal counsel at the 'eleventh hour.' " To the extent Lynch's claim is based on a loss of meritorious defenses, clearly guilt and innocence are at issue: an innocent person is one who has a meritorious defense to the charges while a guilty person is one who lacks a meritorious defense. To establish Warwick's conduct resulted in the loss of a meritorious defense, Lynch's guilt or innocence would be litigated. To rebut Lynch's claims as to lack of a meritorious defense and negligence, Warwick would be entitled to put on evidence establishing Lynch's guilt, the reasonableness of his investigation and conduct in light of Lynch's guilt. Warwick would be entitled to put on evidence that he advised Lynch to plead guilty not because Warwick had

failed to conduct a sufficient investigation or was unprepared for trial but because Lynch was, in fact, guilty and had no meritorious defense to the charges. As to Lynch's claimed damages for having to retain a second attorney (who advised him to plead guilty), guilt or innocence would be at issue since if Lynch were guilty, lacked any meritorious defenses, or was reasonably advised by Warwick to plead guilty, it could not be said that Warwick was the cause of Lynch's incurring the expense of a second attorney. Rather, the cause of the additional expense would have been Lynch's failure to earlier plead guilty as advised by Warwick.

Further, in violation of one of the policies identified in *Wiley*, Lynch is seeking to shift blame; he is seeking to blame Warwick for his lack of a meritorious defense, for his second retained counsel's advice to plead guilty and his guilty plea rather than accepting his responsibility for having committed the crimes. Without a showing of actual innocence, the fact that Warwick could have conducted a more thorough investigation or have communicated more with Lynch fails to establish that Warwick's negligence resulted in any harm, including the need to retain a second attorney.

Furthermore, Lynch's claim that he lost meritorious defenses as a result of Warwick's incompetence is contradicted by the fact Lynch pleaded guilty and thereby admitted he had no meritorious defenses and was, in fact, guilty of the charges.

The dissent suggests that Lynch's claim for attorney fees he paid to Warwick is a breach of contract case not covered by *Wiley*. ▮ Contract law exists to enforce the intentions of the parties to an agreement while tort law is designed to vindicate social policy. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 [254 Cal.Rptr. 211, 765 P.2d 373].) A "wrongful act may constitute both a breach of contract and an invasion of an interest protected by the law of torts. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 139, pp. 203-204.)" *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 774 [69 Cal.Rptr.2d 466].) " '[A] cause of action in tort may sometimes arise out of the negligent manner in which the contractual duty is performed . . . .' " (*Perry v. Robertson* (1988) 201 Cal.App.3d 333, 340 [247 Cal.Rptr. 74].)

▮ Here, although he seeks a contractual-type damage (out-of-pocket expenses for attorney fees) and labels his cause of action as a breach of contract, Lynch is actually seeking recovery on a tort theory for Warwick's negligence, i.e., Lynch is seeking recovery for legal malpractice. Our Supreme Court has made it clear that a legal malpractice action against a former criminal attorney requires a showing of actual innocence. (See also

*Mahoney v. Shaheen, Cappiello, Stein & Gordon* (1999) 143 N.H. 491, 498 [727 A.2d 996, 1000] [holding the actual innocence requirement applies when damages are sought for contempt fines and attorney fees related to a criminal proceeding].)

Further, the fact that Lynch is seeking out-of-pocket expenses, i.e., attorney fees, does not readily distinguish Lynch's case from other criminal malpractice actions. Seeking attorney fees incurred in a legal malpractice action due to the prior attorney's negligence is a typical item of damages. (See *California State Auto. Assn. Inter-Ins. Bureau v. Parichan, Renberg, Crossman & Harvey* (2000) 84 Cal.App.4th 702, 713 [101 Cal.Rptr.2d 72]; *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 910 [274 Cal.Rptr. 186]; *Moe v. Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 289, 303 [98 Cal.Rptr. 547].) Undoubtedly, criminal malpractice actions involving retained counsel would involve a claim for attorney fees and yet the Supreme Court did not create any exception for attorney fee damages.

Additionally, like cases involving an avoidable conviction or longer sentence, Lynch's claim of attorney malpractice, while couched in terms of breach of contract, is integrally involved with guilt or innocence and his case would give rise to the proof problems noted by the Supreme Court in *Wiley*. Lynch's trial would require the jury to engage in the "mental gymnastics" the *Wiley* court sought to avoid. Here, while Lynch may be seeking "quantifiable, out-of-pocket losses," his criminal malpractice trial will involve the same difficulties in proving causation as exist in cases where the complaint is related to a wrongful conviction or longer sentence. Indeed, proof may be even more difficult and convoluted in this case. For example, in his claim to recover fees paid to the second retained attorney, Lynch will have to prove that not only was Warwick negligent, but also that his second attorney was not negligent and that there was no unnecessary duplication of effort. Warwick would be permitted to introduce evidence showing Lynch was guilty, had no viable defense, and should not have hired a second attorney but rather should have pleaded guilty at an earlier date. As to seeking reimbursement for fees paid to Warwick, the proof would be less convoluted but even so, issues of guilt and innocence would arise in the context of determining whether Warwick was negligent. As noted in *Wiley*, the jury would be faced with applying a preponderance of the evidence standard to issues involving a reasonable doubt standard.

The dissent expresses concern that if "proof of actual innocence [were] required under these circumstances, a criminal defense attorney could collect a large retainer fee from a client and neglect the client's case with impunity if the client could not prove actual innocence." (Dis. opn., *post*, at p. 279.)

The dissent's concern was addressed to some extent in *Wiley*. In *Wiley*, the court observed there would be situations where the criminal defense attorney was clearly negligent, such as when the attorney failed to raise a technical defense that would have resulted in a complete dismissal of the case, and yet the Supreme Court held the actual innocence requirement applied in these circumstances. (*Wiley, supra,* 19 Cal.4th 532, 540-543.)

Moreover, there are remedies other than a legal malpractice action to preclude criminal defense attorneys from collecting large retainer fees and then neglecting a client's case. Such an attorney could be reported to the State Bar and be subject to discipline. (See Bus. & Prof. Code, § 6106 [moral turpitude, dishonesty or corruption irrespective of criminal conviction].) Additionally, to the extent the criminal defendant (or other individual who paid the retainer fee) has a dispute with the attorney about fees because the attorney has abandoned the client (versus making disputed tactical decisions about how to try the case), the attorney fee issue could be arbitrated by the State Bar (see *id.,* § 6200 et seq.).[2]

We conclude the actual innocence requirement for a criminal legal malpractice case applies regardless of whether the former criminal defendant is seeking damages for a wrongful conviction, a longer sentence, or for attorney fees.

Because we have concluded that summary judgment was properly granted on the ground that Lynch failed to raise a triable issue of fact as to the required actual innocence element of a legal malpractice action against a former criminal defense attorney, we need not discuss whether summary judgment was also justified on the basis of Lynch's failure to designate an expert.

### DISPOSITION

The judgment and order are affirmed.

Benke, J., concurred.

**McDONALD, J.,** Dissenting.—Thomas J. Lynch, Jr., filed a fourth amended complaint against his former attorney Thomas J. Warwick, Jr.,[1] containing causes of action for negligence, breach of contract and breach of

---

[2]Here, Lynch's allegations and his declarations are not based on Warwick's abandonment, but on a claim that Warwick's performance was negligent.

[1]Lynch also named Warwick's associate, Anthony J. Solare, as a defendant. However, Lynch did not serve Solare with a summons or complaint and Solare did not appear in the action.

fiduciary duty. All three causes of action are based on Warwick's alleged failure to perform the professional services for which Lynch retained him in connection with criminal charges filed against Lynch. The complaint alleges, either directly or through incorporation by reference, that Lynch suffered monetary damages when he was forced to replace Warwick with new counsel. Although Lynch alleges Warwick's conduct caused him to incur additional attorney fees paid to replacement counsel and refers to the additional fees as damages he suffered, he stated in his opening brief and confirmed at oral argument that he does not seek to recover those fees but rather limits his claim to the $17,500 he paid to *Warwick* less the reasonable value of services Warwick rendered.

Warwick moved for summary judgment or, in the alternative, for summary adjudication on two grounds: (1) expert evidence is required to prove Warwick violated the standard of care and Lynch did not designate an expert witness; and (2) Lynch cannot satisfy the requirement under California law that a plaintiff in an action against an attorney who represented the plaintiff in a criminal case must prove his or her actual innocence in the underlying criminal case. The court granted summary judgment on the latter ground and entered judgment in Warwick's favor. The court denied Lynch's subsequent motion for reconsideration and motion to vacate the judgment.

Lynch's appellate briefs and oral argument limit his appeal to contesting the grant of summary adjudication on his breach of contract cause of action. He contends on appeal only that as a matter of breach of contract he is entitled to the return of the retainer paid to Warwick less the reasonable value of services rendered by Warwick. Lynch does not contest the summary adjudication in favor of Warwick on the causes of action for legal malpractice or breach of fiduciary duty and does not seek any tort damages. I would affirm the order granting Warwick's summary adjudication on Lynch's causes of action for legal malpractice and breach of fiduciary duty and consider whether actual innocence is a prerequisite to the breach of contract cause of action.

*Proof of Actual Innocence*

In *Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 545 [79 Cal.Rptr.2d 672, 966 P.2d 983] (*Wiley*), the California Supreme Court held that in a legal malpractice action against a criminal defense attorney actual innocence is a necessary element of the plaintiff's cause of action. The plaintiff in *Wiley* brought a legal malpractice action against the County of San Diego and the deputy public defender appointed to represent him in a criminal action. Before filing the action the plaintiff had successfully petitioned for a writ of habeas corpus based in part on a finding that his defense

counsel's inadequate investigation of the criminal case had deprived him of exculpatory witnesses. (*Id.* at pp. 534-535.) The trial court in the malpractice action ruled that the plaintiff's actual innocence was not an issue and refused to submit the question to the jury. Although the Court of Appeal reversed the judgment on other grounds, it rejected the defendants' argument that plaintiff was required to prove his actual innocence as a condition of recovery. (*Id.* at p. 535.)

The California Supreme Court granted review and held that proof of actual innocence is required in a legal malpractice case against the criminal defense attorney. The court reasoned that "[r]egardless of the attorney's negligence, a guilty defendant's conviction and sentence are the direct consequence of his own perfidy. The fact that nonnegligent counsel 'could have done better' may warrant postconviction relief, but it does not translate into civil damages, which are intended to make the plaintiff whole. . . . While a conviction predicated on incompetence may be erroneous, it is not unjust. . . . [¶] Only an innocent person wrongly convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss. [Citation.] In sum, 'the notion of paying damages to a plaintiff who actually committed the criminal offense solely because a lawyer negligently failed to secure an acquittal is of questionable public policy and is contrary to the intuitive response that damages should only be awarded to a person who is truly free from any criminal involvement.' [Citation.] We therefore decline to permit such an action where the plaintiff cannot establish actual innocence. [Citation.]" (*Wiley, supra,* 19 Cal.4th at p. 539.)

Lynch argues that *Wiley* is inapposite to his case because he does not claim he was wrongfully convicted and sentenced as a result of Warwick's malpractice or that he suffered damages as a result of his conviction or sentence. Rather, he claims that he incurred attorney fees for services not or inadequately performed. Warwick has not responded directly to this argument in this appeal or below. The implied premise underlying Warwick's actual innocence argument and the court's ruling on his summary judgment motion is that *Wiley* applies to *any* action based on the defendant attorney's representation of the plaintiff in a criminal action, regardless of the plaintiff's theory of recovery or the nature of the damages sought.

Lynch's contention that *Wiley* does not apply to this case is convincing. *Wiley* did not consider a situation in which, as here, a convicted criminal defendant seeks on a breach of contract theory to recover only money he or she paid to *retained* counsel for services not rendered in a criminal matter.

*Wiley*'s discussion of the policy reasons for requiring proof of actual innocence and its comparison of criminal legal malpractice cases with civil legal malpractice cases show that its focus was entirely on cases in which the plaintiff seeks compensation for wrongful conviction or a less favorable outcome resulting from the defendant attorney's malpractice. The policy reasons of *Wiley* that required actual innocence in suits by a criminal defendant against his attorney included:

1. preventing the criminal defendant from profiting from his own fraud, taking advantage of his own wrong and acquiring property by his own crime (*Wiley, supra,* 19 Cal.4th at p. 537);

2. preventing the shifting of punishment from a guilty criminal defendant to his former attorney, undermining the system of criminal justice (*Wiley, supra,* 19 Cal.4th at pp. 537-538);

3. not diminishing the recognition that the conduct of the criminal defendant is the ultimate source of his predicament irrespective of his attorney's subsequent negligence (*Wiley, supra,* 19 Cal.4th at p. 540);

4. recognizing that postconviction relief to the convicted criminal defendant within the criminal justice system provides what competent legal representation would have afforded in the first instance (*Wiley, supra,* 19 Cal.4th at p. 542);

5. avoiding the difficulty of quantifying the damages incurred by a criminal defendant resulting from a conviction or a longer sentence (*Wiley, supra,* 19 Cal.4th at p. 543); and

6. avoiding the inherent difficulties of proof that the attorney, by a preponderance of the evidence, was negligent, and that but for the negligence of the attorney the jury would not have found the defendant guilty beyond a reasonable doubt (*Wiley, supra,* 19 Cal.4th at p. 544).

None of these policy reasons apply to the instant case. Because Lynch does not base his claim on his wrongful conviction or length of his sentence, recovery by Lynch from Warwick of the difference between the retainer fee paid and the reasonable value of services rendered would not result in a profit to Lynch because of his own wrongdoing. The focus of the claim is solely on the conduct of Warwick. There is no shifting of the punishment from Lynch to Warwick; Lynch's punishment is not contested and remains the same regardless of the outcome of the breach of contract action. Lynch's wrongful conduct is not the ultimate source of his contract claim, except to

the extent he retained legal counsel to represent him in criminal proceedings. Postconviction relief is irrelevant because Lynch does not contest his conviction or sentence. There is no difficulty computing damages; they are limited to the difference between $17,500 and the reasonable value of services rendered. Proof of Lynch's claim is not convoluted or complex; he need only prove that Warwick did not provide the services he agreed to provide and that the services Warwick did provide were reasonably valued at less than $17,500. *Wiley*'s concern that actual innocence is required to avoid the difficulty of proving that but for Warwick's conduct a jury would not have found Lynch guilty beyond a reasonable doubt is not applicable to Lynch's claim because Lynch does not contest his guilt.

I conclude proof of actual innocence is not required in an action by a client against his or her criminal defense attorney to recover as quantifiable breach of contract damages money the client paid to the attorney for services not performed. Were proof of actual innocence required under these circumstances, a criminal defense attorney could collect a large retainer fee from a client and neglect the client's case with impunity if the client could not prove actual innocence. A criminal defendant's guilt should not deprive him or her of the right to recover money paid to his or her attorney for legal representation that was not provided.

The majority opinion chooses to ignore the limited scope of this case in this appeal. As a result, the majority opinion is a digression into the irrelevant. The majority opinion asserts that "Lynch's claims rest on the assertion that he had meritorious defenses," (maj. opn., *ante*, at p. 272) and therefore his guilt must be litigated in this case. From this premise the majority opinion invokes the applicability of the *Wiley* policy considerations that require proof of actual innocence in a tort legal malpractice claim by a criminal defendant against his attorney. However, Lynch's claim does not rest on the assertion he had meritorious defenses; he concedes his contract claim is unrelated to his guilt or his sentence, and he does not seek damages by reason of his conviction or sentence.

The majority opinion correctly asserts that an act may be a breach of contract and a tort. However, the majority's conclusion that the claim based on that act is a tort claim even though only a contract remedy is sought is bizarre and without cited authority. The proof of tort causation problem posited by the majority does not exist when the claim, as in this case, is limited to the reasonable value of services rendered.

As a palliative to what the majority seems to concede is the unfair result of its opinion, it suggests that an attorney fee dispute between a criminal

defendant and his or her attorney could be arbitrated by the State Bar. This solution seems odd indeed: how can the State Bar provide a fee dispute remedy after an appellate court opinion denies the availability of that remedy because of lack of proof of actual innocence?

### Necessity of Expert Evidence

Because I would remand this case for further proceedings on Lynch's breach of contract cause of action, I discuss the alternate basis for Warwick's summary judgment motion. Warwick argues that summary judgment was also appropriate because expert evidence is required to prove professional negligence and Lynch did not designate an expert witness. Proof of professional negligence is not necessarily required to establish an attorney's breach of contract, although the same conduct may constitute both professional negligence and breach of contract. Under his breach of contract cause of action Lynch need prove only the reasonable value of Warwick's performed services.

Under the summary judgment statute, there are two ways a moving defendant can shift the burden to the plaintiff to produce evidence creating a triable issue of fact. The defendant can take the *no evidence* approach by relying on "factually insufficient discovery responses by the plaintiff to show that the plaintiff cannot establish an essential element of the cause of action sued upon. [Citation.] Alternatively, the defendant may utilize the tried and true technique of negating ('disproving') an essential element of the plaintiff's cause of action. [Citation.]" (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1598 [50 Cal.Rptr.2d 431].)

Summary judgment is not appropriate in this case under the *no evidence* approach. The fact that Lynch did not designate an expert does not establish that he has no evidence to support a breach of contract claim even if the breach of contract may also establish professional negligence. Furthermore, Warwick has not shown through factually insufficient discovery responses by Lynch that Lynch has no evidence. Lynch's declaration in opposition to summary judgment provides evidence (although not expert evidence) that Warwick's representation of Lynch did not satisfy Warwick's contractual obligation.

The requirement of expert evidence to establish breach of an attorney's representational obligations is not absolute. "In some circumstances, the failure of attorney performance may be so clear that a trier of fact may find professional negligence unaided by the testimony of experts." (*Wright v. Williams* (1975) 47 Cal.App.3d 802, 810 [121 Cal.Rptr. 194], fn. omitted;

*Goebel v. Lauderdale* (1989) 214 Cal.App.3d 1502, 1508 [263 Cal.Rptr. 275].) In his declaration, Lynch averred that Warwick was unprepared for trial because he did not interview any of the prosecution witnesses or Lynch's key defense witness and did not communicate with Lynch about the case. Lynch also averred that Warwick promised the prosecution Lynch would plead guilty at a time when Lynch was adamant about proving his innocence. It is within a layperson's common knowledge that the representational obligations, which may be phrased as a professional standard of care, of a criminal defense attorney requires that the attorney investigate his or her client's case, prepare for trial, communicate with the client, and not misrepresent the client's intended plea to the prosecution. Lynch's declaration raises a triable issue of fact as to whether Warwick's performance as Lynch's counsel was deficient in ways that would support a finding of contract liability based on the attorney's services without the assistance of expert testimony. Even assuming expert evidence is required to show Warwick did not meet his representational obligations in this case, Lynch's not designating an expert would not entitle Warwick to summary judgment. A party need not rely on his or her own expert at trial but "may instead call as a witness an expert designated by another party who has been deposed. [Citation.]" (*Salasguevara v. Wyeth Laboratories, Inc.* (1990) 222 Cal.App.3d 379, 387 [271 Cal.Rptr. 780].)

In any event, when a defendant moves for summary judgment, the burden-shifting provisions of Code of Civil Procedure section 437c, subdivision (o)(2) do not operate until the defendant first produces affirmative evidence negating the existence of an element of the plaintiff's cause of action. (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1534-1535 [80 Cal.Rptr.2d 94].) Here, the burden on summary judgment never shifted to Lynch to produce expert evidence that Warwick did not meet his contractual obligations because Warwick produced no evidence that he did perform the services for which he was retained by Lynch. (*Id.* at pp. 1534-1535.)

I conclude the court incorrectly granted Warwick's motion for summary judgment. I would reverse the judgment, and therefore need not address Lynch's contention that the court abused its discretion by not granting his motion to vacate the judgment.[2]

I would direct the trial court to grant summary adjudication in favor of Warwick on Lynch's causes of action for professional negligence and breach

---

[2]Although Lynch's notice of appeal states he is appealing from the order denying his motion for reconsideration, he has waived review of that order by not addressing it in his opening brief. (*Tan v. California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [189 Cal.Rptr. 775].) Furthermore, an order denying a motion for reconsideration is not an appealable order. (*Rojes v. Riverside General Hospital* (1988) 203 Cal.App.3d 1151, 1160-

of fiduciary duty and deny summary adjudication in favor of Warwick on Lynch's cause of action for breach of contract. I would also award Lynch costs on appeal.