Filed 7/22/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DARRYL W. GENIS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARTIN A. SCHAINBAUM et al.,<br><br>    Defendants and Respondents. | B304968<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV02892) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed.

Joseph J. M. Lange Law Corporation and Joseph J. M. Lange for Plaintiff and Appellant.

Klinedinst, Heather L. Rosing, Robert M. Shaughnessy, and Irean (Lu) Zhang for Defendants and Respondents.

————————————

Appellant Darryl W. Genis sued his criminal defense attorney for legal malpractice after Genis entered a plea of guilty to federal tax charges in United States District Court. Genis alleged his attorney, Martin Schainbaum, negligently advised him to sign "closing agreements" by which he agreed to pay civil tax fraud penalties as part of the disposition of his criminal case. Genis contended that but for Schainbaum's negligence, he would not have agreed to that obligation.

Genis filed his complaint for legal malpractice in Los Angeles Superior Court against Schainbaum and Martin A. Schainbaum, a Professional Law Corporation (hereinafter respondent or Schainbaum). Respondent demurred on the ground that actual innocence of the criminal charges, which Genis did not allege, is a necessary element of a cause of action for legal malpractice arising out of a criminal proceeding. The trial court agreed, found that the obligation was incurred as part of a plea agreement to resolve criminal charges, and sustained the demurrer without leave to amend. Genis filed a timely appeal. We affirm.

### *Question Presented*

As framed by appellant, "In the legal malpractice context, does the 'actual innocence' standard adopted in *Wiley v. County of San Diego* (1998) 19 Cal.4th 534 [(*Wiley*)], apply to legal malpractice claims stemming from legal representation involving simultaneous civil and criminal cases, when a plaintiff is only pursuing legal malpractice claims as to the underlying civil case?"

***The Criminal Prosecution***

We take our facts from the complaint and the exhibits attached to the demurrer, to which no objections were raised.[1] On July 3, 2015, Genis, a lawyer himself, retained Schainbaum to represent him in a tax investigation. On November 18, 2015, the United States Attorney's Office informed Schainbaum that his client Genis was the target of a federal investigation into criminal violations of the Internal Revenue Code. The

---

[1] Schainbaum filed a request for judicial notice of the exhibits attached to the demurrer. The record does not reflect whether the trial court granted the request. Both parties relied on the exhibits during their arguments before the trial court and do so now on appeal. We have reviewed the exhibits and take judicial notice of them on our own motion, pursuant to Evidence Code section 452, subdivision (d). (See also *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751 ["a demurrer may be sustained where judicially noticeable facts render the pleading defective [citation], and allegations in the pleading may be disregarded if they are contrary to facts judicially noticed"]; see also *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1103 ["judicial notice may be taken of documents pertinent to the issues raised by a demurrer"].) "As to accepting the accuracy of the contents of judicially noticed documents, [there are] three different approaches to judicial notice at the demurer stage: the truth of a document's contents will not be considered unless it is a judgment, statement of decision, or order [citations]; the truth of statements may be accepted when made by a party but not those of third parties or an opponent [citations]; and the contents of a document may only be accepted ' " 'where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed.' " ' " (*C.R. v. Tenant Healthcare Corp.*, at p. 1103.)

government informed Schainbaum it intended to pursue criminal felony charges against Genis for willful tax evasion in violation of title 26 of the United States Code sections 7201 and 7206.

About one year into representing Genis pre-indictment, Schainbaum negotiated and Genis executed a plea agreement with the United States Attorney's Office. Genis agreed to plead guilty to a three-count information charging misdemeanor willful failure to file tax returns for tax years 2009, 2010, and 2011 in violation of title 26 of the United States Code section 7203. Genis also agreed to make full restitution, which was tentatively set at $679,958, and to cooperate with the IRS in determining his true tax liability for tax years 2005 through 2012. Genis promised to sign separate "closing agreements" prior to sentencing, which would allow the IRS to assess and collect unpaid taxes, interest, and "any applicable civil penalties" for each year.[2] He also agreed not to object to the IRS receiving material and information obtained by way of criminal grand jury subpoenas and to pay "at or before sentencing all additional taxes and all penalties and interest assessed" by the IRS.

Finally the agreement provided that if Genis succeeded in withdrawing his pleas of guilty in the future, the government would be relieved of its obligations and could charge any offense not filed or dismissed as a result of the agreement without Genis raising a statute of limitations defense.

---

[2]    A "closing agreement" is IRS Form 886 whereby the IRS and taxpayer agree to a final determination of tax liability and the case is permanently and conclusively closed. (26 C.F.R. § 301.7121-1; 26 U.S.C.S. § 7121.)

4

In exchange for Genis's promises, the government did not charge him with felony tax fraud violations that would have exposed him to a possible 15-year prison sentence and the probable loss of his license to practice law.

On July 26, 2016, the government filed the fully executed plea agreement and the criminal information. On October 24, 2016, Genis entered pleas of guilty. The district court recited Genis's obligations under the plea agreement, including his promises to pay restitution and applicable civil penalties. Genis testified he was satisfied with Schainbaum's representation, believed Schainbaum had fully advised him, and fully understood the consequences of the pleas. Genis further swore he was pleading guilty because he was in fact guilty of the crimes charged in the information. Sentencing was scheduled for February 13, 2017.

On November 17, 2016, the prosecutor sent the "closing agreements" to Schainbaum for Genis to sign before the sentencing hearing in February. The closing agreements imposed 75 percent civil tax fraud penalties on the tax liabilities Genis owed for the years 2009 through 2012.

Schainbaum forwarded the closing agreements to Genis to sign. Genis signed the closing agreements before he was sentenced. At sentencing, Genis admitted his willful failure to file: "I'm here because of what I did wrong, not because of what somebody else did or did not do. [¶] And I'm here to face those consequences regardless of how hard they may be; and when I walk out of here, I'm the one that's going to be responsible and I'm not going to change that opinion because I don't like the sentence. [¶] So I just wanted to be perfectly clear that I hold myself and nobody else responsible for my shortcomings.

5

[¶] . . . [¶]  I need to make money first and foremost to pay off this obligation and the obligation is split.  It's split in terms of the nearly $700,000 that is the restitution; and I might add that I didn't contest that amount because I didn't want to delay the early admission of guilt."  Genis also acknowledged the enormous monetary penalties he faced pursuant to the plea agreement: "The government, the Treasury, has suffered the loss of the use of the money.  They're going to get it back; and no matter how long it takes, they're going to get it back with a penalty and interest that is so large that it could never be charged in a commercial transaction without violating usury laws."

The district court sentenced Genis to eight months imprisonment on each count to run consecutively and one year of supervised release.  It also ordered restitution of $679,958 for unpaid or understated taxes.  Genis began serving his sentence of imprisonment on May 19, 2017.

***Post-Conviction Proceedings***

One year later, on February 15, 2018, Genis filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, pursuant to title 28 of the United States Code section 2255 (2255 motion).  The district court assigned case number CV 18-1247-DSF to the motion.  Genis alleged Schainbaum provided ineffective assistance of counsel in that he failed to investigate Genis's gambling addiction in mitigation of sentence; failed to object to imposition of consecutive sentences; and failed to object to the civil fraud penalties required by the closing agreements.  The government opposed the motion.

On August 6, 2018, the district court held an evidentiary hearing on the motion.  Both Genis and Schainbaum testified.  The district court made extensive factual findings.  It found that

6

after purposely negotiating a plea agreement that did not allege fraud so as to protect Genis's law license, neither Genis nor Schainbaum contemplated the application of civil *fraud* penalties as set out in the closing agreements. (Civil fraud penalties are up to 75 percent of the unpaid tax liability while civil accuracy penalties are 20 percent.) By the same token, the court also found that the government, in good faith, did contemplate such fraud penalties and the very large numbers it provided to Genis and Schainbaum as tentative penalties supported the transparency of its position, even though the plea agreement itself never used the word "fraud." The court found a lack of mutual understanding between the parties about whether civil accuracy or civil fraud penalties were going to be imposed. The court assumed Schainbaum, who either did not review the documents or did not notice that civil fraud penalties were being imposed, provided ineffective assistance of counsel which prejudiced Genis.

As a remedy, the district court offered Genis the opportunity to withdraw his plea and go to trial. Genis declined the offer and instead asked the court to strike the civil fraud penalties only and validate the rest of the agreement.

Ultimately, the district court found it inappropriate, absent fraud or intentional misrepresentation, to elevate one party's position over another's. Because striking the civil fraud penalties was the sole remedy Genis requested, the district court denied the motion. Genis appealed. The United States Court of Appeals for the Ninth Circuit affirmed. (*United States v. Genis* (9th Cir. 2020) 824 Fed.App. 539.)

### The Complaint

On February 1, 2019, Genis filed a three-page complaint alleging a single cause of action for "legal negligence" and seeking $10 million in damages. He alleged Schainbaum committed legal malpractice in that he failed to consult with a gambling addiction expert to obtain a more lenient sentence; failed to review the closing agreements before forwarding them to Genis for signature and before signing them himself; and failed to advise Genis that he would be liable for penalties at a higher "fraud" rate even though the charges to which he pleaded guilty did not include an element of fraud. Genis alleged he was liable for substantially more than he otherwise would have owed "but for [Schainbaum's] negligence."

### The Demurrer and The Trial Court's Ruling

On November 20, 2019, respondent filed a demurrer asserting Genis "does not allege and cannot prove actual innocence of the crimes charged, has not obtained post-conviction relief or exoneration for the crimes charges, and cannot establish that Schainbaum caused his alleged harm."

Genis argued in opposition that he was challenging only the "civil" portion of the plea agreement, which resolved "separate civil and criminal cases." Because the civil fraud penalties were the only points at issue, he argued he did not have to prove his actual innocence of the criminal charges.

On January 10, 2020, the trial court sustained the demurrer without leave to amend. It reviewed the plea agreement and found that Genis's agreement to pay restitution and applicable civil penalties was part and parcel of the resolution of the criminal investigation and charges against him. The trial court stated the inclusion of civil penalties was "like any

run-of-the-mill case where you might have something like restitution." It called the agreement to pay civil penalties a "condition precedent" to the judge imposing an agreed-upon sentence. The trial court did not address the second issue raising lack of causation. It entered judgment on February 5, 2020.

### *Applicable Law*

A demurrer tests the legal sufficiency of the complaint. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) The grounds for a demurrer are those listed in Code of Civil Procedure section 430.10, including, among others, failure to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e)).

An order sustaining a demurrer without leave to amend is reviewed de novo. The court exercises its independent judgment to determine whether or not the complaint states facts sufficient to constitute a cause of action as a matter of law. (*Lincoln Property Co., N.C., Inc. v. Travelers Indemnity Co.* (2006) 137 Cal.App.4th 905, 911.) We assume the truth of properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters that are judicially noticeable. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) We construe the pleading in a reasonable manner and read the allegations in context. (*Id.* at p. 726.) However, courts will not close their eyes in situations where a complaint contains allegations of fact inconsistent with attached documents/exhibits, or allegations contrary to facts which are judicially noticed. (*Ibid.*) Where facts appearing in attached exhibits or judicially noticed documents contradict, or are inconsistent with, the complaint's allegations, we must rely

9

on the facts in the exhibits and judicially noticed documents. (*Ibid*.)

When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the plaintiff can amend his/her complaint to cure the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) If the defect can be cured, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Ibid*.) The burden of proving such reasonable possibility is squarely on the plaintiff. (*Ibid*.)

### *Analysis*

Preliminarily, we note Genis raises only one issue on appeal, that is, Schainbaum's alleged negligence in failing to exclude the IRS civil fraud penalties as part of the terms of the written plea agreement and closing agreements. Other theories of liability alleged in the trial court have not been pursued on appeal and are therefore waived. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)

In any action for legal malpractice against criminal defense counsel, the plaintiff, as the former criminal defendant, must necessarily allege and prove actual innocence of the criminal charges. (*Wiley, supra,* 19 Cal.4th at p. 545.) The actual innocence requirement applies to any legal malpractice " ' "in the course of defending a client accused of crime" ' " (*id*. at p. 536, fn. 1) or, put another way, "arising out of a criminal proceeding." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1200 (*Coscia*).) When it is clear the plaintiff cannot in good faith plead factual innocence or exoneration, leave to amend the complaint should not be granted. (*Wilkinson v. Zelen* (2008) 167 Cal.App.4th 37, 49.)

*Wiley* extensively discusses the public policy reasons undergirding the actual innocence rule.  Notably, *Wiley* rejected carving out exceptions to the rule, asserting, "Regardless of the attorney's negligence, a guilty defendant's conviction and sentence are the direct consequence of his own perfidy.  The fact that nonnegligent counsel 'could have done better' may warrant postconviction relief, but it does not translate into civil damages, which are intended to make the plaintiff whole." (*Wiley*, *supra*, 19 Cal.4th at p. 539.)  The *Wiley* Court flatly stated " 'the notion of paying damages to a plaintiff who actually committed the criminal offense . . . is of questionable public policy and is contrary to the intuitive response that damages should only be awarded to a person who is truly free from any criminal involvement.' " (*Ibid.*)

Acknowledging the tension created where, as here, guilt is conceded, but counsel's negligence nevertheless caused a less favorable outcome, *Wiley* announced that a defendant's "own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence.  Any harm suffered is *not* 'only because of' attorney error but principally due to the client's antecedent criminality." (*Wiley*, *supra*, 19 Cal.4th at p. 540.)  It consequently ruled that the paradigm of "but for" causation in civil malpractice cases is inapplicable in the context of malpractice by criminal defense counsel.  In so holding, the court pointed out that unlike a civil matter where the damage done by an attorney's negligence can only be recovered through a legal malpractice claim, a criminal defense lost through an attorney's negligence can be corrected by post-conviction relief. (*Id.* at pp. 542–543.)  Indeed, given the availability of post-conviction relief, "it is inimical to sound public policy to afford a

11

civil remedy, which in some cases would provide a further boon to defendants already evading just punishment . . . ." (*Id*. at p. 543.)

Here, it is undisputed appellant is guilty of the offenses to which he pleaded guilty. As set out above, Genis has never wavered in publicly proclaiming his guilt and remorse for his conduct.

Appellant's argument that he was prejudiced by his attorney's negligence in plea negotiations and sentencing is analogous to the arguments rejected in *Coscia*. There, plaintiff sued his defense attorney for malpractice, alleging her negligence in advising him not to cooperate with the government resulted in a guilty plea to a felony instead of a misdemeanor. (*Coscia*, *supra*, 25 Cal.4th at p. 1198.) Quoting *Stevens v. Bispham* (Or. 1993) 851 P.2d 556, 562, our Supreme Court reaffirmed the holding in *Wiley*, stating, " 'Although a plaintiff may wish that he or she had gotten a better deal, we do not consider it appropriate, outside of circumstances where . . . relief . . . is available under the post-conviction relief law, to treat a convicted offender as having been caused "harm" in a legally cognizable way by any disposition of that person's case that was legally permissible.' The convicted criminal's own conduct is deemed to be the sole cause of his or her indictment and conviction—either after trial or based on a guilty plea." (*Coscia*, at pp. 1202–1203.)

We agree with the trial court that the civil penalties arose out of the criminal prosecution, as did any alleged legal malpractice attributable to Schainbaum. Genis was required to allege actual innocence. Moreover, under *Coscia*, Genis was required to obtain exoneration of his guilt as a prerequisite to proving actual innocence in his malpractice action against his former criminal defense counsel. (*Coscia*, *supra*, 25 Cal.4th at

p. 1205.) He has not satisfied either element; the demurrer was properly sustained.

Genis makes two arguments as to why the actual innocence rule does not apply to him. First, he argues there were two simultaneous separate cases – one criminal and one civil—and he is challenging only the penalties arising out of the civil case. He makes the bold statement that the district court recognized it was dealing with one civil and one criminal matter because it included a civil case number in the caption of its order denying the 2255 motion.

Plaintiff's position is flatly contradicted by the record. While it is accurate to suggest the prosecutor inserted civil penalties as part of the punishment to which Genis agreed, it stretches the record beyond credulity to claim there was a separate pending civil case. At the outset, Genis was informed he was looking at being charged criminally. He received consideration in the form of reduced charges because he agreed to the inclusion of civil penalties as part of the disposition of the criminal case. That the government asked for civil penalties in exchange for forbearance in charging felony offenses does not in any way transform the underlying action into civil litigation. We note Genis appeared to acquiesce to the notion that this case, at its core, was a criminal prosecution when he declined the opportunity to withdraw his plea and go to trial, presumably because of the risk of being charged with more serious offenses as was expressly reserved in the plea agreement.

Genis points to the civil case number (CV 18-1247-DSF) on the caption of the order denying post-conviction relief as evidence that there was a simultaneous civil proceeding out of which the civil penalties arose.  First, Genis filed the 2255 motion one year after the conclusion of his criminal case.  By no means can anyone characterize the proceedings under that case number as a "simultaneous" civil matter, as Genis has done.

Second, a 2255 motion is the statutory equivalent of a petition for writ of habeas corpus, traditionally a civil filing. (*Sanders v. United States* (1963) 373 U.S. 1, 15 ["the motion procedure is the substantial equivalent of federal habeas corpus"].)  Hence, the civil case number.  While it is a civil proceeding in name and number, it is not a civil tax action brought by the government to recover penalties for civil tax violations.  Because the government cannot recover civil tax penalties by way of a 2255 motion, there is no way the motion can be deemed the civil equivalent of the criminal information filed by the government against Genis.  Although Genis avers that he retained Schainbaum to represent him in a "criminal tax/civil" matter, the exhibits upon which all parties relied belie and, in fact, contradict that there was ever a civil action contemplated or filed with respect to civil tax liability.  In sum, to state there were two simultaneous, ongoing civil and criminal matters is simply disingenuous.  We decline to distort the record.

Next, Genis relies on *Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419 (*Bird*) and *Lynch v. Warwick* (2002) 95 Cal.App.4th 267 (*Lynch*) to claim he may pursue his counsel's legal negligence as to the civil tax fraud penalties without a showing actual innocence, even if the penalties arise out of a criminal matter.  In *Bird*, plaintiff filed a

14

lawsuit accusing his criminal defense attorney of overbilling under the retainer agreement the parties had executed. The court found that the primary rights plaintiff asserted in the complaint were to be billed in accordance with specific contractual provisions and to be free from unethical or fraudulent billing practices. (*Bird,* at p. 421.) Plaintiff expressly renounced any claim that counsel's representation adversely affected the outcome of the criminal case. (*Id.* at p. 428.) This type of dispute implicated neither the actual quality of the representation plaintiff received nor plaintiff's guilt or innocence of the criminal charges. (See also *Brooks v. Shemaria* (2006) 144 Cal.App.4th 434, 440–442 [actual innocence rule did not apply to suit for return of unused portion of retainer or to counsel's negligent failure in a separate action to obtain return of seized property before it was destroyed].) The action was allowed to proceed to challenge the "padded" invoices.

In *Lynch,* plaintiff sought to recover "out-of-pocket expenses unrelated to guilt or innocence." (*Lynch*, *supra*, 95 Cal.App.4th at p. 270.) He alleged his criminal defense attorney negligently failed to investigate facts and possible meritorious defenses to the charges. This negligence compelled Lynch to fire counsel and bear the cost of retaining a new attorney to represent him. (*Id.* at pp. 269, 270.) The *Lynch* court held that regardless of the labels Lynch put on his causes of action (breach of contract, breach of fiduciary duty), he was fundamentally seeking recovery for the alleged substandard representation he received from his criminal defense attorney. He therefore had to allege and prove his actual innocence of the charges. (*Id.* at pp. 273–274.)

15

These two cases do not help Genis, who alleges that paying civil fraud penalties was not what he contemplated when he signed the plea agreement and the closing agreements. The primary right he seeks to assert is the right to competent representation. He seeks compensation for what he considers a less favorable outcome directly tied to his lawyer's alleged malpractice in not refining the language of the plea agreement and not reviewing the closing agreements to ensure they correctly reflected Genis's expectations. He is expressly alleging, not disclaiming, that the substandard quality of Schainbaum's representation resulted in a harsher sentence. This is exactly what the *Wiley* Court determined cannot be countenanced absent proof of actual innocence. (*Wiley*, *supra*, 19 Cal.4th at pp. 542-543.)

In closing, we note that even if Schainbaum was, in fact, negligent in not catching and then preventing the inclusion of civil fraud penalties in the disposition, his alleged negligence is exactly the kind of mistake correctable in post-conviction proceedings. Indeed, Genis had such a proceeding where he was offered the opportunity to withdraw the plea, abandon the challenged agreement, and proceed to trial. He declined to do so.

We find the trial court properly sustained the demurrer without leave to amend because Genis failed to plead actual innocence, a necessary element of his cause of action for legal malpractice arising out of a criminal proceeding.

16

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondents.

## CERTIFIED FOR PUBLICATION


STRATTON, J.

We concur:


GRIMES, Acting P. J.


OHTA, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.