[Civ. No. 32590.   Second Dist., Div. Five.   June 17, 1969.]

EUGENE D. KILMER, Plaintiff and Appellant, v. JOSEPH R. CARTER, JR., et al., Defendants and Respondents.

Milton Zerin and Morton Minikes for Plaintiff and Appel-. lant.

Joseph R. Carter, Jr., in pro. per., and Lewis D. Jones for Defendants and Respondents.

KAUS, P. J.—Plaintiff appeals from a judgment based upon findings and conclusions to the effect that although the defendant attorneys were negligent in failing to file an opening brief in a previous appeal, thereby causing it to be dismissed under rule 17 (a) of the California Rules of Court, plaintiff was not damaged because he failed to prove that the appeal would have been won.

We are thus called upon to determine whether the trial court in the case at bar correctly decided that plaintiff did not "prove that the appeal . . . would have resulted in a reversal." (*Pete* v. *Henderson,* 124 Cal.App.2d 487, 491 [269 P.2d 78].) It is obviously necessary to determine what the first appeal would have been about.

Plaintiff Kilmer was one of the lessees of a ground lease signed June 1, 1961. The lessor was one Severance. The lease period was 30 years starting April 1, 1961. The lease provided for a graduated rental for the first 15 years, rising in increments from $250 per month for the first 30 months to $1,500 per month for the last 30 months of the 15-year period. There-

after the monthly rental was to be the greater of two figures: $1,000 per month or 30 percent of the gross income derived from the use of the property. It was contemplated that the lessees would develop the property into a trailer park. The lease also contained a provision reading as follows: ''Lessees agree, concurrently with the execution of this lease, to assume the present existing encumbrance of $25,000.00, which is payable at the rate of $146.00 or more per month and shall make all payments thereon, including prepayment penalties, direct to Lessor, who agrees to forward such payments directly to the mortgagee. Due date of note is Feb. 1, 1964. Lessees have read and examined all of the terms and provisions of the note and deed of trust constituting such encumbrance, (and agree that the assumption of said encumbrance and the prompt payment of the note are and shall be a covenant and obligation of Lessees which shall be independent of and survive the termination or cancellation of this lease, by whatever cause; and upon payment of the note), title to said property shall thereupon vest in Lessor in fee, subject only to this lease and subordinate only to the trailer park construction loan provided for hereinbelow.''

The two parentheses shown are inserted in ink, as is the comma just before the first parenthesis. Along the margin of the quoted paragraph the following notation appears: ''See letter dated 6-1-61.'' This is followed by the initials of the lessors and the lessees. Pertinent parts of the letter dated June 1, 1961, are copied in the footnote.[1]

---

[1]''Re: Lease Agreement, Lot 1, Tract 24653,
Los Angeles, California

''Gentlemen:

''Concurrently herewith, we are entering into a lease on the above described property.

''Notwithstanding any of the provisions of said lease agreement, and as a supplement thereto, this letter, when fully executed by you, will evidence our agreement as follows:

''1. . . . . . . . . . .

''2. If, within the period commencing April 1, 1962 and ending March 31, 1963, said lease is terminated or cancelled, for any cause whatsoever, and whether or not specified in said lease, you agree to pay to me concurrently with and as a condition precedent to said termination or cancellation, the sum of ten thousand dollars ($10,000.00) and upon such payment the provisions of the first paragraph commencing on page three (3) of said lease providing for the assumption of encumbrance and payment of note independent of termination or cancellation of the lease, shall be of no further force and effect and that obligation shall be deemed to be fully satisfied coincidental with such payment.

''3. . . . . . . . . . .

''Except as specifically set forth herein, said lease agreement shall

The lessees ran into zoning problems with respect to the trailer park development. Apparently they felt that Severance violated a covenant of the lease in opposing a rezoning which became necessary because of new zoning ordinances. It was eventually resolved at the first trial that Severance did not violate any covenant and that issue is out of the way. In any event, on August 1, 1962, the lessees failed to pay the rent then due. On August 15 Severance served a "Notice to Pay Rent or Quit" which also declared a forfeiture of the lease. The rent claimed to be overdue consisted of the basic rental of $250 per month, plus the $146 necessary to service the trust deed. The lessees did not vacate the premises and had not done so when the subsequent unlawful detainer action went to trial.

Two lawsuits were filed as a result of these disagreements. Plaintiff Kilmer and one Horn, the other lessee, filed an action for declaratory relief on September 4, 1962. Essentially they wanted a declaration that Severance had breached a covenant to assist them in connection with the rezoning and that they themselves were under no obligation under the lease until Severance was more cooperative. Severance answered and counterclaimed. One of his counterclaims was for the sum of $25,000 the unpaid balance of the note. Another was for the August rent of $396.

In the meanwhile, however, Severance himself had filed an unlawful detainer action in which he sued for:

1. The August rent;

2. $85 per day damages for the lessees' continued holding over; and

3. $25,000 on account of the unpaid note.

The two matters were eventually consolidated for trial. Sev-

---

remain in full force and effect; and time shall be of the essence in the performance hereof.

"Please signify your agreement hereto and your acceptance hereof by signing the original of this letter and returning same to me. The copy is for your files.

"Very truly yours,
/s/ Alvin V. Severance
"Alvin V. Severance

"Agreed and accepted
this 1st day of June, 1961.
/s/ Eugene D. Kilmer
Eugene D. Kilmer
/s/ Charles R. Horn
Charles R. Horn"

erance did very well indeed. The judgment in the declaratory relief action made various declarations adverse to Kilmer and Horn. The findings also recite that Severance was entitled to recover $10,000, rather than $25,000, on account of the unpaid note, but concluded that no such award should be made in the declaratory relief judgment, because it was being made concurrently in the judgment in the unlawful detainer action.

The judgment in that action found the lessees guilty of unlawful detainer, restored Severance to possession, declared the lease forfeited, awarded damages in the sum of $396 for rent, $21,360 for the unlawful detainer and $10,000 based on the letter agreement.

The record on appeal was filed with this court on August 19, 1964, but on October 23, 1964, the appeal was dismissed, no opening brief having been filed.

The argument that plaintiff would have obtained some benefit from an appeal in the two prior actions is predicated on the following points:

1. The award of $10,000 would have been set aside as a matter of law because:

a. once Severance declared the lease forfeited, he could not enforce it to the extent of exacting the $10,000, declared in the June 1, 1961, letter to be a "condition precedent" to termination;

b. such payment was, by the terms of the contract, due only if the lessees cancelled or terminated the lease;

c. the award of $10,000 in addition to the damages for holding over was a "double recovery"; and

d. the enforcement of the $10,000 payment amounted to an enforcement of liquidated damages unauthorized by section 1671 of the Civil Code.

2. The expert evidence did not support the award of damages in the sum of $21,360 because Severance's expert never testified that the land in question was rentable.[2]

---

[2]It is interesting to note that if the trial court in the case at bar had agreed with plaintiff on the $10,000 point, it probably should have held that the abortive appeal would have resulted in a straight remission in that amount and awarded damages accordingly. On the other hand, had the court agreed on the $21,360 item, it could only have said that the appeal would have resulted in a reversal with directions to do it right the next time; however, without proof of the result of such a retrial with respect to the item of damages, the trial court in this case would have been unable to find the amount of damages that resulted from defendants' malpractice. No such proof was attempted.

## I.

We have come to the conclusion that had the appeal in the Severance litigation been pursued, there would have been no reversal with respect to the $10,000 item, but rather a certain amount of puzzlement why, in view of the issues and proof in the Severance action, the amount was not $25,000.

The record does not show how much was due on the $25,000 note.[3] No extrinsic evidence concerning the meaning of the interlocking provisions of the lease and the June 1, 1961, letter was offered at the Severance trial. The Court of Appeal would have had nothing to guide it except the documents themselves. The most plausible explanation of the intent of the parties appears to be this: the $25,000 payment the lessees were to make on Severance's behalf when the note became due was in the nature of a bonus for the execution of the lease. The reference to "prepayment penalties" means that if lessees wanted to incur them, they could pay off the bonus as soon as they wished to do so. As long as they did not, it was their duty to service the note and trust deed by paying the monthly interest as rent.

The letter of June 1, 1961, is of course, a puzzler. The lease itself has no escape clause for the lessees' benefit. Were there such a clause, the letter could be construed to mean that the lessees could cancel upon payment of $10,000 without further duty to pay the note. The letter itself could be read as implying such a power. A third alternative is the one which apparently appealed to the judge who presided at the Severance trial: that the $10,000 payment became due even when Severance, in effect, terminated the lease.

We agree with plaintiff's present counsel that this interpretation does some violence to the language of the letter which makes the $10,000 payment a "condition precedent" to termination. This implies that the payment is something the lessees had to make before they could enforce a termination, not something they owed when Severance pushed a forfeiture down their throats. But where does this leave plaintiff? The lease in the clearest possible language states that the obligation to pay the note was independent of and survived any termination and cancellation of the lease. The June 1, 1961, letter gave the lessees certain privileges to get out from under the obligation. Of these they never availed themselves. Therefore they still owed the $25,000.

---

[3]$146 per month is almost precisely the amount of interest at the rate of 7 percent per annum, if the entire $25,000 was unpaid.

Of course it is not really that simple. At least one thoughtful commentator has expressed the view that the rule which, on the lessee's default, permits the landlord to keep a consideration paid for the execution of the lease (*Warming* v. *Shapiro,* 118 Cal.App.2d 72, 75 [257 P.2d 74]) is out of tune with the general development of California law with respect to forfeitures. (Harvey, *A Study To Determine Whether the Rights and Duties Attendant Upon the Termination of a Lease Should Be Revised,* 54 Cal.L.Rev. 1141, 1172-1174; *Caplan* v. *Schroeder,* 56 Cal.2d 515 [15 Cal.Rptr. 145, 364 P.2d 321]; *Freedman* v. *Rector, etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1].) It may well be that if defendant had approached the Severance litigation with this possible development of the law in mind, a very substantial part of the $25,000 could have been saved.[4] The trouble is, however, that the lessees never attacked the problem from that angle. If the trial court, at the Severance trial, had applied the doctrine of *Caplan* v. *Schroeder, supra* and *Freedman* v. *Rector, etc. of St. Matthias Parish, supra,* it would have acted entirely outside of the issues and proof. We do not intimate what the rule of damages should be, were the law to develop in the direction indicated, but obviously Severance would have made an entirely different effort had the lessees claimed that there was a forfeiture to be avoided. (Cf. *Honey* v. *Henry's Franchise Leasing Corp.,* 64 Cal.2d 801, 803 [52 Cal.Rptr. 18, 415 P.2d 833].)

The articulate presentation of counsel on the present appeal with respect to the $10,000 item wholly fails to show just exactly what defense with respect thereto was put forward at the first trial, except, of course, the general claim, found to be unmeritorious, that Severance had sabotaged the purpose of the lease when he opposed the rezoning of the property. This is not due to any neglect on counsel's part. We have, on our own, inspected the two Severance files. All that we find is a claim that the Notice to Pay Rent or Quit was insufficient because the "provision for the assumption of the obligations under the note was not a covenant to pay rent." It is not contended on this appeal that the Severance judgment would have been reversed because the Notice to Pay Rent or Quit was insufficient; nor, in view of our holding that the monthly

---

[4]That he did not do so may have been a mistake, but can hardly be called malpractice. (*Lucas* v. *Hamm,* 56 Cal.2d 583, 592-593 [15 Cal. Rptr. 821, 364 P.2d 685].) In any event this was not plaintiff's theory of malpractice in the trial court.

interest payments were properly considered as rent, could such an argument prevail.

## II.

We could dispose of the claim that there would have been a reversal of the $21,360 damage item, by simply pointing out that plaintiff offered no evidence of the amount of damages he would have suffered at a retrial, had there been such a reversal. We do not believe that it was defendants' burden to go forward on that point. Plaintiff was attempting to prove damages. Mere proof of negligent failure to secure a reversal of the Severance judgment simply left plaintiff's case hanging in midair, since the Severance case would have had to be retried on the damage issue. The fact that at such a hypothetical retrial it would have been Severance's burden to prove the amount of his damages is no reason for relieving this plaintiff of his duty to plead and prove the damages resulting from defendants' neglect. (*Lally* v. *Kuster*, 177 Cal. 783, 787-788 [171 P. 961]; *Campbell* v. *Magana*, 184 Cal.App. 2d 751, 754-757 [8 Cal.Rptr. 32]; *Pete* v. *Henderson*, 124 Cal. App.2d 487, 491 [269 P.2d 78].)

More fundamentally, perhaps, we cannot agree that the simple failure to ask the expert at the Severance trial whether the land was rentable would have caused a reversal. That it was rentable was perfectly evident. The Severance-Kilmer lease is what the shouting was all about. The lessees' holding over despite a claim for damages in the sum of $85 a day was itself proof that the land was rentable. The supposedly missing question, if asked, might well have provoked judicial impatience.

## III.

Plaintiff also complains that the trial court did not award him the cost of transcripts and filing fees expended in connection with the Severance appeal. Since he would have lost the appeal, nobody would have reimbursed him for these costs and they are not a proximate result of defendants' negligence.

The judgment is affirmed.

Stephens, J., and Aiso, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 13, 1969.