STATE of Missouri, Plaintiff–
Respondent,

v.

George J. ARNDT, Defendant–Appellant.

George J. ARNDT, Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 18303.

Missouri Court of Appeals,
Southern District,
Division Two.

July 1, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 25, 1994.

Robert D. Lewis, Lewis & Aiken, Springfield, for defendant-movant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Theodore A. Bruce, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

PREWITT, Judge.

A jury found appellant guilty of murder in the second degree and armed criminal action. He was sentenced to 30 years and 3 years respectively on the convictions with the sentences to run concurrently. Appellant appealed from that conviction. He also filed a motion under Rule 29.15 seeking to vacate the convictions. After an evidentiary hearing his motion was denied on July 20, 1993. Appellant also appealed from that ruling and the appeals were consolidated. Rule 29.15(*l*).

■ By his first point appellant challenges the sufficiency of the evidence to support the convictions. On reviewing such a contention, this court accepts as true the evidence favorable to the state, including favorable inferences drawn therefrom and disregards evidence and inferences contrary, unless the inferences "are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them.". *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). Appellate review is to determine whether there is sufficient evidence for a reasonable juror to have found defendant guilty beyond a reasonable doubt. *Id.* at 405.

Appellant was convicted of murdering his wife, Sarah Arndt, by shooting her with a pistol. They had been married for nearly 14-½ years before her death. They owned a resort in Stone County, Missouri, known as Happy Valley Lodge and lived in a house on the lodge property. Appellant contends the evidence indicates suicide rather than murder.

Appellant asserts that the sole witness who testified "of the criminal agency of anyone was Deputy Coroner Tom Martin." Appellant contends that Martin's testimony should not be considered because of inconsistencies, conflicts with other testimony, and admitted "speculation". Because his testimony was essential to the case, appellant says no submissible case was made. The state does not argue that it made a case without Martin's testimony, but contends it should be considered.[1]

---

1. We do agree with appellant's excellent counsel in appellant's reply brief that the record shows that the state's brief contains numerous inaccuracies regarding the facts.

Citing us to *State v. Shaw,* 602 S.W.2d 17, 19–20 (Mo.App.1980), appellant acknowledges that usually the testimony of a single witness can be sufficient to establish any fact and that inconsistency in testimony is a jury question. Appellant emphasizes from *Shaw* that "the inconsistencies in the testimony of a single witness going to a vital and material issue in the case will be scrutinized closely by the court in determining whether or not such testimony constitutes substantial evidence."

Martin's belief, if he had same, that he initially considered Mrs. Arndt's death to be a suicide, and his offering the weapon back to appellant, is not necessarily inconsistent with his testimony. He did not have all the facts before him when he initially was at the scene and he testified that even there he questioned whether it was a homicide or suicide.

That Martin's testimony was in part "speculation" was not a word he used but one that he somewhat seemed to agree with when used by appellant's counsel during Martin's cross-examination. Of course, there is a certain amount of speculation in any opinion, but we find that Martin's opinions and his overall testimony were sufficiently based on facts he observed and was in a position to observe. The value of Martin's opinions and his credibility were jury questions. Based upon the jury's verdict it is obvious they believed Martin.

On September 28, 1988, a paramedic received a call at 1:20 a.m. of a shooting at the Happy Valley Lodge. On arrival the paramedic found Sarah Arndt in the house lying on a bed, nude from the waist up. A check of her pulse, heart activity and the pupils of her eyes indicated she was dead. The paramedic saw what she thought was a bullet wound behind Mrs. Arndt's left ear. The decedent's hands were over her head. A pistol was lying in a pool of blood on the left side of the decedent's body, resting against the left shoulder.

Appellant told the paramedic that the decedent had been told to quit smoking and they had quarreled about her smoking. She had told him to get away and he had gone downstairs and fell asleep. A loud noise woke him, he ran upstairs and found her in

bed. No one else was present in the house that evening other than he and the decedent.

Martin testified that the location where the weapon was found and blood "splashes" on her left arm were not consistent with Mrs. Arndt having shot herself. A gun residue test on her hands performed by Martin did not indicate that she had fired a weapon. There was evidence that several years before her death a $200,000 life insurance policy was taken out on Mrs. Arndt which following her death was paid to appellant. Two days before her death a $100,000 life insurance policy was taken out on her and a like policy was issued on the life of appellant. There was also a $10,000 death benefit as a part of an employee benefit policy covering Mrs. Arndt. Both the $100,000 policy and the $10,000 benefit were paid to appellant.

There was testimony that in June of 1988 a maid, Cindy Issacs, who worked at the Happy Valley Lodge, and appellant were kissing with "their arms around one another". On April 8, 1989, appellant and Issacs married.

There was evidence that Mrs. Arndt's death was not a suicide, that only she and appellant were in the house, that appellant was involved with another woman and had a substantial financial gain due to Mrs. Arndt's death. Appellant had been a deputy sheriff and would apparently have been familiar with the use of firearms. This evidence was sufficient for the jury to find appellant guilty beyond a reasonable doubt. Point one is denied.

■ For his second point appellant contends that the trial court erred at the hearing on his new trial motion because he was not allowed to present "newly discovered evidence that the state had knowingly used perjured testimony ... in that witness Tom Martin had placed a foreign substance upon the left hand of the deceased before taking the gunshot residue test and had testified at deposition and at trial that the condition of the hands had not been changed from the way they were at the scene to the time the test was performed".

In order to receive a new trial because of newly discovered evidence, defendant must establish: "1) the evidence has come to the

knowledge of the defendant since the trial; 2) it was not owing to want of due diligence that it was not discovered sooner; 3) the evidence is so material that it would probably produce a different result on new trial; and, 4) it is not cumulative only or merely impeaching the credit of a witness." *State v. Culkin*, 791 S.W.2d 803, 814 (Mo.App.1990).

Appellant may have only learned of Martin using the substance on the left hand of the decedent after the trial, but failed to establish that due diligence would not have discovered it sooner. Nor has appellant shown that the evidence was so material that it would probably produce a different result on retrial. Appellant did present testimony regarding this newly discovered evidence at the hearing on his motion for new trial. A witness testified that under certain conditions applying the substance "could affect the result". There was no testimony or other evidence establishing that the gun residue test would have a different result here. Appellant has not met his burden to receive a new trial. Point Two is denied.

■ The remainder of appellant's points go to the trial court's denying his Rule 29.15 motion. Review of the denial of a Rule 29.15 motion is limited to determining whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j). *State v. Williamson*, 836 S.W.2d 70, 73 (Mo.App. 1992).

■ Appellant seeks to raise under that motion the failure of the trial court to allow him to present the "newly discovered evidence" earlier referred to. This court is compelled to follow the pronouncement of the Supreme Court of Missouri in *Wilson v. State*, 813 S.W.2d 833, 834–835 (Mo. banc 1991), that newly discovered evidence is not a basis upon which post-conviction relief may be granted. *State v. Morris*, 844 S.W.2d 549, 556 (Mo.App.1992). Appellant also raises as a point that the trial court erred in denying his Rule 29.15 motion because there was insufficient evidence to support the conviction. What we said in discussing Point One answers that assertion.

■ Appellant asserts that the trial court erred in not granting his Rule 29.15 motion because he received ineffective assistance of counsel in numerous particulars. "To sustain a claim of ineffective assistance of counsel movant must establish that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability being a probability sufficient to undermine confidence in the outcome." *Tatum v. State*, 693 S.W.2d 903, 904 (Mo. App.1985).

■ "To prove ineffective assistance of counsel, a post-conviction relief movant must show that counsel's performance fell below a reasonable level and that this deficiency prejudiced him." *State v. Hamilton*, 791 S.W.2d 789, 797 (Mo.App.1990). Generally, defense tactics which are a matter of trial strategy will not support a claim of ineffective assistance. *Id.* at 798. "Counsel's decision to not use a witness is a virtually unchallengable matter of trial strategy." *Id.*

A review of the record establishes that appellant received effective counsel from an experienced and competent criminal defense attorney. The matters complained of were primarily trial strategy, much of which the evidence indicated was discussed with appellant. In any event, the matters complained of were not such as to establish a probability sufficient to undermine confidence in the outcome. This contention is denied.

■ Appellant also asserts that the trial court erred in finding that the state had not withheld material evidence from him and knowingly using perjured testimony. He said this occurred because witness Tom Martin testified that the hands of the victim were in the same condition as when she was initially found when "he had in fact placed a foreign substance on the ring finger of the left hand of the victim in an attempt to remove the rings from her hand".

■ To receive post-conviction relief on the basis of the state using perjured testimony, appellant had the burden to establish (1) the witness's testimony was false; (2) the state used that testimony knowing it was false; and (3) the conviction was obtained as a result of that testimony. *Bryant v. State*, 604 S.W.2d 669, 674 (Mo.App.1980).

In view of the testimony that none of the substance was put on the part of the hands that were tested, the trial court could have found that the testimony as given at trial was not false. The trial court found there was no evidence indicating that the prosecutors were aware of the lotion being placed on the ring finger. Moreover, there is no indication that applying the substance to remove the rings would necessarily have affected the gun residue test or the jury's consideration of it. This contention is denied.

■ Appellant's remaining contention is that the trial court erred in denying his Rule 29.15 motion because the state while it had control of the pistol reblued it and thus "did materially alter the weapon and materially change the characteristics of the weapon by allowing it to be reblued, prejudicing appellant's rights to retest the weapon in its same condition as it was on the night of the victim's death to establish its normal characteristics in discharging gunshot residue."

A deputy sheriff testified that Martin gave him the pistol at the scene and told him the victim's family would probably want the gun back. Martin told him to have it cleaned because blood on a gun will ruin its finish. The deputy said he went to take the gun back and appellant's son told him appellant did not want it. He said they gave him a bill of sale for it and he then had it "re-blued". The deputy kept the gun for about three months when the sheriff's department said they wanted it and he gave it to them. Apparently at that time he was no longer a deputy.

It took about three months for the powder residue test on the victim's hands to be received by the sheriff's office from the crime laboratory in Springfield. The director of the laboratory testified that "the effect a reblued weapon would have on the gunshot residue would be that it would actually tighten the system and the potential for less gunshot residue." He believed it could change the gunshot residue characteristics of the weapon.

There is no indication in the record that appellant at any time sought to "retest" the pistol as to gunshot residue nor that the state intentionally sought to hamper his right to do so. The constitutional duty of the state to preserve evidence is limited to evidence that might be used in the defendant's defense and it must possess an exculpatory value that was apparent before it was destroyed. *State v. Little*, 674 S.W.2d 541, 543 n. 3 (Mo. banc 1984), citing *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

■ A criminal defendant must show "bad faith" to receive relief from the destruction of evidence that had the potential to be helpful to him. *State v. Richard*, 798 S.W.2d 468, 469–471 (Mo.App.1990). There is no showing of any bad faith on the part of the officers nor was it established that at the time the gun was reblued that the state had any indication it had the potential to be used in appellant's defense. This contention is denied.

The judgments in Case No. 18303 and in Case No. 19019 are affirmed.

FLANIGAN, P.J., and CROW, J., concur.