**Bernardo O. COSTA, Appellant,**

v.

**Arthur E. ALLEN, Respondent.**

**No. WD 71055.**

Missouri Court of Appeals,
Western District.

June 8, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 2010.

Application for Transfer Denied
Nov. 16, 2010.

Appellant acting pro se.

Shaun Mackelprang and Kathleen Robertson, Jefferson City, MO, for respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., and ALOK AHUJA, JJ.

JAMES M. SMART, JR., Judge.

Bernardo Costa appeals the trial court's judgment dismissing his tort action for damages against the attorney representing him in his motion for post-conviction relief. Costa asserted claims of breach of fiducia-

384

ry duty and legal malpractice. The judgment is affirmed.

## Procedural Background

Costa was convicted of the first-degree statutory rape of his daughter. *See State v. Costa,* 11 S.W.3d 670 (Mo.App.1999). The conviction was affirmed on appeal. *Id.* Costa filed a motion for post-conviction relief under Rule 29.15. *See Costa v. State,* 85 S.W.3d 758 (Mo.App.2002). The denial of that motion was affirmed. *Id.*

Thereafter, Costa brought a civil action for legal malpractice against Arthur E. Allen, the public defender who represented Costa in his Rule 29.15 proceeding. Costa's petition was dismissed with prejudice. Costa appealed. After opinion in this court, the Missouri Supreme Court accepted transfer. *See Costa v. Allen,* 274 S.W.3d 461, 462 (Mo. banc 2008). After holding that Costa failed to state a cause of action, the Court nevertheless remanded the case to the trial court because the court had denied Costa the opportunity to file an amended petition. *Id.* at 463–64. Upon remand, Costa filed an amended petition.

## Allegations of the Amended Petition

In his petition, Costa alleged that at the time of his post-conviction proceeding, he directed Mr. Allen, as post-conviction counsel, to secure the attendance of Dr. Allen Scott at the motion hearing. Dr. Scott had testified in the criminal trial as to the size of the victim's hymenal opening. Costa wished to employ certain documents to demonstrate the falsity of Dr. Scott's testimony. Costa also wanted to show at the motion hearing that Dr. Lori Frasier did not measure the hymenal opening, but simply relied on Dr. Scott's false measurements. Costa further wanted to show that Dr. Frasier did not even review pertinent photographs, although the photographs were available to her. Costa wanted to compel the attendance of Loletta Combs for the same purpose. Costa also alleged that he told counsel to secure the attendance at the post-conviction hearing of Melissa Welpman, along with Loletta Combs, to introduce their notes in order to prove that their trial testimony and that of another person, Lee Rear, was false. Costa also wanted to prove that an insect in his daughter's vaginal area was misidentified as a public crab and that his daughter's statements were prompted by leading questions. Costa wanted to show that the behaviors allegedly acted out by Costa's daughter did not occur and that any testimony to that effect was false testimony presented by the family of Lee Rears.

Costa alleged that Allen, for "his own reasons" and to "further the interests" of the State, did not follow his instructions to secure the attendance of the witnesses. He alleged that Allen's actions constituted an intentionally dishonest breach of fiduciary duty and a constructive fraud, as well as a negligent breach of duty. There is no allegation that Defendant Allen was bribed by money or otherwise participated in a conspiracy to sell an innocent man "down the river" for some other personal motive. The gist of Costa's petition is that Allen was uncooperative (dishonestly, because he did not communicate to Costa his refusal to cooperate) and chose to "further the interests" of the State by refusing to recognize the wisdom of Costa's insights as to how to get a new trial. He alleged that Allen attempted to get pertinent documents into evidence, but that he could not because the witnesses necessary to sponsor the documents were not present. He alleged that this failure resulted in the inadmissibility of certain documents, which would have shown that he was "erroneously convicted." Costa sought money com-

pensation, including punitive damages, for the alleged malpractice of Mr. Allen.

## Trial Court Ruling

Defendant Allen moved to dismiss the amended complaint, contending that Costa failed to state a claim for relief. He also contended that he was protected by official immunity. The trial court granted the motion, dismissing the case with prejudice. Costa appeals.

## Costa's Collateral Attack on the Conviction

Numerous issues are presented in this appeal. Many are briefed by the State. Because this appeal involves the dismissal of plaintiff's petition, and because the factual allegations of the petition are taken as true for purposes of our analysis, the issues presented are issues of law. *See Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993). Although there are multiple apparent legal obstacles to Costa's pursuit of this claim, we select one as easily dispositive of this appeal: the public policy doctrine that the law does not allow a collateral attack of a valid criminal conviction.

Costa asserts in his petition that he was erroneously convicted of the statutory rape of his daughter. He alleges that witnesses were lying, that his daughter was coached, and that there was a scheme to convict him propagated by the foster family (the family of Lee Rears) with whom his daughter spent time. He thus implies, but does not expressly plead, that he is *actually* innocent, as opposed to *legally* innocent, of the crime of the statutory rape of his daughter. The distinction between implying and expressing is not insignificant, when one considers that it is possible to be framed with bogus evidence, and thus convicted, of a crime one actually did commit.

A criminal conviction is achieved only after the determination of the existence of proof beyond a reasonable doubt. The law allows and provides for appeals of the direct conviction. Missouri law further allows motions for post-conviction remedies and for appeal of the rulings thereon. Missouri law provides an opportunity for counsel at the post-conviction stage as well as at the trial stage. *See* sections 545.820, 547.360.5, RSMo 2000; Mo. CONST., art. 1, sec. 18(a). *See also* Rules 29.15(e), 24.035(e).

As long as a conviction is not set aside by an appeal or a post-conviction procedure, it remains a final judgment, and it stands as presumptive proof to the entire world for all purposes that the person convicted was in fact actually guilty. While the defendant may deny guilt, the denial is entirely without legal import as long as the judgment of conviction stands. The judgment conclusively binds the defendant and precludes his assertion of a collateral claim as to which his actual innocence is an essential element. *See State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 502–04 (Mo.App.1985).

The post-conviction proceeding as to which Costa claims legal malpractice was a proceeding under Missouri Supreme Court Rule 29.15, which allows challenge of a conviction or sentence on grounds that the conviction or sentence violates the constitution or laws of this state or the United States, including claims of ineffective assistance of counsel. The rule also allows challenge on the basis that the trial court lacked jurisdiction to impose the sentence, or that the sentence was in excess of that permitted by law. Rule 29.15 is *not* designed to create a forum for a second opportunity to discredit the witnesses who testified at trial. It is *not* a retrial in itself. If, however, the post-conviction movant pleads and proves that the trial

defense counsel was guilty of constitutionally ineffective assistance and that such ineffectiveness was prejudicial, the movant can obtain the relief of an entirely new trial. Then the movant, of course, can have a "do-over" as to the impeachment of the witnesses against him in the criminal trial.

Here, Costa does not allege or seem to understand that the 29.15 motion is about proving ineffectiveness of counsel at the trial level. He pleads his claim against Arthur Allen as though Mr. Allen should have proceeded as though the 29.15 case were intended to allow a chance to bring prosecution witnesses back into the courtroom and impeach them with their own notes and records—in other words, to *directly* cast doubt on the guilty verdict by essentially re-trying the case. But because a proceeding under Rule 29.15 is not a retrial, at best it could have *indirectly* cast doubt on the verdict by demonstrating ineffective assistance of trial counsel. In any event, overlooking this lapse in the pleading, we will assume for argument purposes that Costa wishes to be understood as asserting that if post-conviction counsel had done what Costa had wanted counsel to do, counsel would have been able to successfully demonstrate the constitutional ineffectiveness of trial counsel.

■ It is settled that a claim for relief from a valid conviction cannot be asserted in a claim of legal malpractice. *See, e.g., Johnson v. Raban,* 702 S.W.2d 134, 138 (Mo.App.1985). In *Johnson,* the convicted client, after losing his direct appeal and his post-conviction motion, sued the attorney who represented him in the criminal trial. *Id.* at 135. The defendant attorney moved to dismiss the action on the ground of collateral estoppel. The trial court took note of the reported cases involving the plaintiff client and held that the action was properly barred by collateral estoppel. *Id.*

at 136. Noting that the standard for determining ineffective assistance of counsel in a post-conviction proceeding is for practical purposes identical with the standard required for submission of a legal malpractice claim, the court found that the application of the doctrine of collateral estoppel was appropriate. *Id.* at 137–38. The court went on, however, beyond the facts of that case, to invoke the public policy considerations that were equally applicable. The court declared that the public policy of this state dictates that a person who has "failed in his attack upon his conviction both directly and collaterally" (referring to the direct appeal and the post-conviction proceeding and appeal) should "not be permitted to recover against his attorney in a civil malpractice action for damages allegedly arising out of the attorney's handling of his defense." *Id.* at 138. The court said that it would "undermine the effective administration of the judicial system" to allow the relitigation of the issue of guilt or innocence in a subsequent action. *Id.*

■ This case, despite Costa's use of the phrase "breach of fiduciary duty" and "constructive fraud," is essentially a malpractice action that seeks to retry the criminal case, regardless of how the pleader wishes to describe the claim. In *State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 499 (Mo.App.1985), the client, pursuant to a plea bargain, pleaded guilty to assault with intent to kill with malice. (His earlier conviction after trial had been reversed upon direct appeal, and the case had been remanded. *Id.*) Later, after his guilty plea, and after the subsequent failed attempt to set it aside, he sued the defense attorney, contending that counsel failed to investigate, subpoena, and cross-examine witnesses in the earlier trial, thereby failing to establish defenses of alibi and misidentification. *Id.* at 501. Trial defense

counsel, at that point a defendant in the civil case, sought a writ of prohibition on the basis that the suit was barred by collateral estoppel and public policy. *Id.* at 503. The court issued its writ based on considerations of defensive collateral estoppel *and* public policy. *Id.* at 504. The court recognized that plaintiff's *actual* innocence (which the court called "factual innocence") was an "indispensible" element of a malpractice claim against the attorney who represented the defendant at trial. *Id.* at 503. The court stated that it would be against public policy for the suit to continue in that it would "shock the public conscience, engender disrespect for courts and generally discredit the administration of justice." *Id.* at 504 (*quoting In re Estate of Laspy,* 409 S.W.2d 725, 737 (Mo. App.1966)).

Although this case involves alleged misfeasance in connection with a post-conviction proceeding rather than a claim as to the criminal trial itself, we believe that the same principles would apply here, if not more so.[1] If anything, applying the public policy doctrine to bar such a claim makes even more sense in this context than it does in the case in which the alleged tortious conduct was that of the *trial* defense counsel, because here the "but-for causation" as to the conviction of an innocent person is another step removed. It is impossible to quantify the damage value of the loss of an entirely new trial without there being a way to have predicted the outcome of the new trial. As noted, Costa does not plead what such an outcome would be, much less assert actual innocence, or provide us with a road map for our judicial accommodation of a concept for determining the value of merely having a new trial. The only damage pleaded

here is the defeat of his effort to obtain a new trial. Even if we assume that an acquittal would result from a new trial, that only puts the case in a posture equivalent to *O'Blennis,* in which the court found the public policy and collateral estoppel principles to be so compelling that it granted a writ of prohibition against allowing the claim to proceed.

Also, of course, in the absence of actual innocence, which is not pleaded, Costa's own illegal actions would be the full legal and proximate cause of his damages. Anything else would "shock the public conscience." *Id.* at 504. *See also* 7A C.J.S. *Attorney & Client,* sec. 325, at 362 (2004):

A criminal defendant bringing a malpractice action fails to state a cause of action when he or she fails to allege actual innocence and fails to set forth any facts that would establish actual innocence in the underlying criminal case.

The same public policy principles should apply whether the assertion is entitled "breach of fiduciary duty" or "professional negligence." To rule otherwise would be to undermine the state's interest in not allowing the guilty to escape punishment in that it would allow the actually guilty to transfer all or part of the punishment to another. *See id.,* sec. 306, at 340. As a result of public policy considerations, Costa's claim for money damages for his attorney's alleged misdeeds is barred by the presumption of guilt imposed by the final judgment of conviction.

## Conclusion

Because Costa cannot be permitted to collaterally attack or undermine the final judgment of conviction, we hold that the trial court properly dismissed Costa's petition with prejudice. We need not reach

---

1. This court has reached the same conclusion in another pending case with a very similar context. *See Kuehne v. Hogan,* 321 S.W.3d 337 (Mo.App. W.D.2010), handed down contemporaneously with this case, 321 S.W.3d at 341.

any of the other issues that would otherwise be present in this appeal.

HARDWICK, concurs.

AHUJA concurs in separate opinion.

ALOK AHUJA, Judge, concurring.

Although I agree that the dismissal of Costa's Petition should be affirmed, I do not find it necessary to address the issue of first impression decided by the majority: namely, whether a plaintiff alleging attorney malpractice in connection with a post-conviction relief proceeding can proceed without alleging his actual innocence, and in the face of a subsisting criminal conviction. Instead, I believe Costa's Petition suffers from defects more mundane, but nonetheless dispositive: *first,* the Petition fails to adequately allege that Costa would have obtained post-conviction relief but for Allen's claimed malpractice; and *second,* it fails to allege damages proximately caused by Allen's alleged malpractice, because Costa does not allege that he would have been acquitted (or received any other more favorable outcome) at the new trial he claims Allen negligently failed to secure. I accordingly concur in the result.

1. As an initial matter, Costa's Petition fails to adequately allege that he would have achieved post-conviction relief but for Allen's purported negligence. At the outset of his Petition, Costa alleges that the grounds on which he sought post-conviction relief were "that the prosecution knew or should have known that [testimony it presented at his trial] was false, and failed to correct it," and that his trial counsel failed to present "exculpatory materials in the form of documents which were or

should have been in his file before and at the time of trial." Beyond these general allegations describing Costa's underlying post-conviction relief claims, the Petition fails to plead any facts suggesting that the evidence Allen negligently failed to present would have proven that either the prosecution or defense counsel knew, or should have discovered, the alleged falsity of the testimony presented at Costa's criminal trial. Instead, his Petition contains detailed allegations that the evidence omitted from his post-conviction proceeding would have established that the testimony presented in his criminal trial was false, and that the witnesses acted deliberately, either to aid the prosecution or from other ulterior motives.

Given the grounds on which Costa sought post-conviction relief as described in his Petition, he needed to show either that the prosecution knowingly presented false, material testimony;[2] *or* that his defense counsel failed to present exculpatory evidence which either was known to defense counsel, or was discoverable through reasonable investigation.[3] Yet Costa's Petition does not allege that Allen failed to present evidence which would have proven either of these linchpin issues. This ground, alone, justifies dismissal.

2. Costa's Petition suffers from another, equally fundamental defect: it fails to allege that he would have been acquitted (or received some other disposition more favorable than in his original trial) at the new trial he claims that Allen negligently failed to secure. Instead, Costa's Petition merely alleges that he would have been awarded post-conviction relief (in these circumstances, a new trial) if Allen had acted more competently. That is not enough.

**2.** *See, e.g., State v. Albanese,* 9 S.W.3d 39, 49–50 (Mo.App. W.D.1999), *State v. Arndt,* 881 S.W.2d 634, 637 (Mo.App. S.D.1994).

**3.** *See, e.g., Fisher v. State,* 192 S.W.3d 551, 555 (Mo.App. S.D.2006); *Alhamoud v. State,* 91 S.W.3d 119, 121 (Mo.App. E.D.2002).

Prior Missouri decisions have recognized that, in order to establish damages proximately caused by an attorney's negligent handling of litigation, a malpractice plaintiff must prove "that it would have prevailed in the underlying case but for [the attorney's] actions." *Day Advertising, Inc. v. Devries & Assocs., P.C.*, 217 S.W.3d 362, 367 (Mo.App. W.D.2007).

> The plaintiff [in a legal malpractice suit] has the burden to establish the defendant's negligence proximately resulted in damages to the plaintiff. Because the alleged damages are based on the resolution of the underlying action …, the plaintiff must prove a "case within a case." The plaintiff must prove that it had a valid claim or defense.

*Id.* (citations and internal quotation marks omitted); *see also, e.g., Stockmann v. Frank*, 239 S.W.3d 650, 657 (Mo.App. E.D. 2007).

While not in these precise circumstances, other litigants have made essentially the same malpractice claim as Costa does here: that their attorney negligently forfeited their right to a trial, or to a new trial, or to a trial before a particular factfinder. As a natural outgrowth of the "case within a case" principle, courts addressing such claims have held that the forfeiture of a litigant's procedural rights—even if caused by an attorney's negligence—is not enough to establish a viable malpractice claim, without evidence that the proceeding the litigant wanted would have resulted in a more favorable outcome. Thus, in *Kilmer v. Carter*, 274 Cal.App.2d 81, 78 Cal.Rptr. 800 (1969), a malpractice plaintiff alleged that his attorney negligently failed to file an opening brief in the appeal of an adverse judgment, thereby costing the malpractice plaintiff his right to a new trial. The California Court of Appeal held that the malpractice plaintiff had failed to prove his claim be-cause, among other things, he had failed to show that he would have achieved a more favorable outcome at the new trial to which he alleged he was entitled:

> We could dispose of the claim that there would have been a reversal of the [underlying judgment], by simply pointing out that plaintiff offered no evidence of the amount of damages he would have suffered at a retrial, had there been such a reversal. We do not believe that it was defendants' burden to go forward on that point. Plaintiff was attempting to prove damages. *Mere proof of negligent failure to secure a reversal of the [underlying] judgment simply left plaintiff's case hanging in midair, since the [underlying] case would have had to be retried on the damage issue.* The fact that at such a hypothetical retrial it would have been [the underlying plaintiff's] burden to prove the amount of his damages is no reason for relieving this [malpractice] plaintiff of his duty to plead and prove the damages resulting from defendants' neglect.

*Id.* at 804 (emphasis added) (citations omitted).

Another case similarly observes that, in a legal malpractice claim alleging negligence by appellate counsel,

> the relevant determinations are whether, had an appeal been timely taken, plaintiff would have prevailed and, on retrial, have obtained a more favorable result. In such a case, the first issue for the trial court is to determine on the record made in the original trial, as though it were a direct appeal, whether plaintiff would have prevailed had the appeal been timely taken. If that is resolved in plaintiff's favor, the second matter before the trial court is to retry the original case on the merits to determine whether, on the facts and law, plaintiff should have prevailed.

*Universal Ideas Corp. v. Linn County*, 64 Or.App. 805, 669 P.2d 1165, 1166 (1983) (involving claim against trial court clerk for failing to send notice of judgment, resulting in forfeiture of appeal rights) (citations omitted); *see also* 4 Ronald E. Mallen & Jeffrey M. Smith, LEGAL MALPRACTICE § 31:52, at 743 (2010). Other decisions reach the same result in circumstances in which a malpractice plaintiff claims that an attorney's negligence cost the plaintiff his right to a trial: the denial of the right to trial, even if based on acknowledged negligence, is not enough to state a claim—the malpractice plaintiff must allege and prove what the results of that trial would have been.[4] Indeed, this is essentially the result reached by the Eastern District in *Stockmann*, 239 S.W.3d 650, where a malpractice plaintiff claimed that her attorney's "failure to timely refile her products liability/personal injury lawsuit ... resulted in the loss of her cause of action." *Id.* at 652. In these circumstances (where the attorney had allegedly forfeited the malpractice plaintiff's right to even litigate the merits of her claim), the Court applied the general principle that, "[i]n a legal malpractice lawsuit, a plaintiff's damages are based on what a plaintiff could have recovered in the underlying lawsuit. Thus a plaintiff must prove a 'case within a case.'" *Id.* at 657.

Here, Costa's Petition alleges only that Allen's alleged negligence in his post-conviction relief proceeding cost him his right to a new trial. The Petition contains *no* allegation that Costa would have been acquitted at such a re-trial, or that he would have received some other, more favorable outcome than in his original trial. This omission likewise justifies affirmance of the dismissal of Costa's Petition.

Based on the pleading defects described above, I join in the affirmance of the dismissal of Costa's Petition.

---

**4.** *See, e.g., Jones Motor Comp. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*, 197 F.3d 1190, 1194 (7th Cir.1999) (Illinois law) (claim that counsel negligently forfeited client's right to trial by jury, rather than to court, in underlying action; affirming summary judgment for attorney-defendant where "there is no credible evidence of what a jury might have awarded"); *Law Practice Mgmt. Consultants, LLC v. M & A Counselors & Fiduciaries, LLC*, 599 F.Supp.2d 355, 359 (E.D.N.Y.2009) (granting summary judgment against malpractice plaintiff where plaintiff contended that attorney negligently failed to timely oppose summary judgment motion in underlying case, because malpractice plaintiff made no showing that it would actually have prevailed in underlying case); *Allied Prods., Inc. v. Duesterdick*, 217 Va. 763, 232 S.E.2d 774, 775 (1977) (" 'If an attorney, in disregard of his duty, neglects to appear in a suit against his client, with the result that a default judgment is taken, it does not follow that the client has suffered damage,' " without evidence showing the merit of the malpractice-plaintiff's position in the underlying action), overruled on other grounds, *Shipman v. Kruck*, 267 Va. 495, 593 S.E.2d 319 (2004); *but see Gans v. Gray*, 612 F.Supp. 608, 621 n. 12 (E.D.Pa.1985) ("The challenged conduct consists of a post-trial, procedural error. It would be unreasonable under these circumstances to demand proof of success on the merits in the underlying action. The more appropriate standard would be to have the plaintiff present evidence that he would have succeeded on a motion for a new trial. To the extent that a plaintiff is deprived of the right to a trial de novo, he certainly is damaged.").