Gary D. Witt, Judge
Appellants George Fuller and Clara Fuller (collectively the "Fullers" and "George" and "Clara," respectively) appeal the judgment of the Circuit Court of Jackson County, Missouri. Fullers filed a petition against Ronald Partee ("Partee") and Byron Fox ("Fox") which alleged breach of contract, breach of fiduciary duty, and legal malpractice. Partee and Fox filed a motion to dismiss the action, which was granted by the trial court. The Fullers raise six points on appeal alleging error. We find that the circuit court erred in dismissing George's claim for breach of contract against Partee. We reverse and remand for further proceedings on this point. In all other respects we affirm.
Background[1]
George Fuller is currently incarcerated for murder and other related charges. He *867 was convicted following a jury trial in 1990 and is serving a prison term of life without the possibility of parole. George's conviction was affirmed on direct appeal as were his pro se motions for post-conviction relief. State v. Fuller , 837 S.W.2d 304 (Mo. App. W.D. 1992) ; see Fuller v. State , 485 S.W.3d 768 (Mo. App. W.D. 2016). On December 12, 2010, George contracted with Partee for Partee to represent George in his appeal from the denial of his motion to reopen his Rule 29.15 proceeding. Pursuant to the terms of the contract, Partee specifically agreed to perform certain services including: (a) prepare and file appellate brief; (b) oral argument; and (c) reply brief "if we decide that one was necessary." George's sister, Clara, delivered to Partee the agreed upon attorney fee of $6,000 and Partee filed an Appellant's Brief appealing the motion court's judgment denying the motion to reopen his Rule 29.15 proceeding. The Fullers allege that once Partee received payment of the $6,000 retainer fee, he ceased communication with them.
This Court docketed the case for "no argument" and sent a letter to Partee instructing him that he had ten days within which to request the case be moved to the oral argument docket. Partee sent a letter to George acknowledging that George's case had been placed on the "no argument" docket and stated he would make inquiries as to why argument had not been scheduled. The Fullers attempted to contact Partee to instruct him that he could and should request oral argument. Partee did not timely request oral argument nor did he discuss this decision with George. This Court ultimately affirmed the judgment of the motion court. Fuller v. State , 361 S.W.3d 22 (Mo. App. W.D. 2011).
Following this court's decision on George's appeal, the Fullers brought suit against Partee. Ultimately, the Fullers jointly filed an Amended Petition[2] asserting claims against Partee and Fox for breach of contract, breach of fiduciary duty, and legal malpractice. Both Partee and Fox filed separate Motions to Dismiss. The circuit court granted both motions. The Fullers appeal raising six claims of error.
Standard of Review
"We review de novo the grant of a motion to dismiss, examining the pleadings to determine whether they invoke principles of substantive law." Weems v. Montgomery , 126 S.W.3d 479, 483 (Mo. App. W.D. 2004) ; Lynch v. Lynch , 260 S.W.3d 834, 836 (Mo. banc 2008).
A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all the plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or a cause that might be adopted in that case.
Prenger v. Boat Store, Inc. , 453 S.W.3d 381, 384-85 (Mo. App. S.D. 2015) (quoting Bosch v. St. Louis Healthcare Network , 41 S.W.3d 462, 463-64 (Mo. banc 2001)). "The *868 pleadings are liberally construed and all alleged facts are accepted as true and construed in a light most favorable to the pleader." Weems , 126 S.W.3d at 483 (quoting Koger v. Hartford Life Ins. Co. , 28 S.W.3d 405, 410 (Mo. App. W.D. 2000) ).
Fox attached an affidavit to his motion to dismiss and the Fullers attached additional affidavits and documents in their suggestions in opposition to Partee and Fox's motions to dismiss. The Fullers requested that the court treat Fox's motion to dismiss as a motion for summary judgment. When the parties request the court to consider exhibits or matters outside of the pleadings in response to a motion to dismiss, the motion may be converted to a motion for summary judgment. Crest Constr. II, Inc. v. Hart, 487 S.W.3d 85, 89 (Mo. App. W.D. 2016). Because all parties attached affidavits and other documents to their motions on which they rely for some of their arguments and the Fullers specifically requested that the trial court treat the motion as one for summary judgment we will review it as a motion for summary judgment. "When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Co. , 854 S.W.2d 371, 376 (Mo. banc 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." Id. Thus, this Court may consider the affidavit of Fox when deciding whether claims against him should have been dismissed. See generally, Deeken v. City of St. Louis , 27 S.W.3d 868, 870 (Mo. App. E.D. 2000).
Discussion
I.
For clarity of discussion we address the points on appeal out of order. We begin with Point Relied On VI which alleges that the trial court erred in finding that there was no partnership between Partee and Fox.
The Fullers allege that Fox was law partners with Partee at the time Partee and George contracted for legal representation. Because of the partnership Fullers argue, Fox would have shared in any proceeds from the contract and should be liable for any damages. Although the Fullers further admit that they joined "Defendant Fox because they had no other means to recoup the damages they suffered as a result of the breach of contract." The circuit court found that the petition failed to properly plead facts to establish that a partnership existed between Partee and Fox. We agree.
According to an affidavit provided by Fox, he has not practiced law in fifteen years and has not occupied an office with Partee in as much time. The Fullers allege that they hired Partee to represent George because, after attempting to contact Fox, they were told by an unknown person that Fox no longer practiced law and were given the name of Partee. The alleged "referral" does not provide evidence of a partnership. If it is indicative of anything, it supports Fox's contention that he was not practicing law at the time George hired Partee and therefore could not have been in a legal partnership with Partee at the time of the contract. The only additional evidence that the Fullers have to suggest that Fox and Partee were partners is that Partee used letterhead titled "Fox & Partee." The letterhead, did not identify Fox as an attorney with the firm and the engagement letter was signed solely by Partee and made no mention of Fox. Additionally, directly below the firm name, it is clearly indicated that the letter is coming from "Ronald E. Partee, P.C." This is further support for the finding that Partee *869 was practicing law as a professional corporation and not as a law partner with Fox. The Fullers' brief identifies no response to the lack of evidence supporting a partnership other than noting that Fox does not explain why old letterhead was used nor affirmatively show that he did not share in profits. This was not his burden. The Fullers needed to plead facts, not mere conclusions, establishing that Fox was in a legal partnership with Partee. Pulitzer Publ'g v. Transit Cas. Co. , 43 S.W.3d 293, 302 (Mo. banc 2001). The use of letterhead bearing the name "Fox & Partee" and the fact that many years before George retained Partee, Fox acted as Partee's business partner are not sufficient facts to survive a motion summary judgment. As such, the court did not err in dismissing Fox from the action in its entirety. Because we find no error in the dismissal of Fox, the remainder of our discussion shall be related solely to Partee.
II.
We next address the Fullers' claim that the court erred in finding that Clara was not a third-party beneficiary to the contract and thus had no standing to bring a claim against Partee.[3] For ease of discussion, we also address the Fullers' claim argued throughout their brief that Clara otherwise had standing to bring claims for malpractice and breach of fiduciary duty.
First, it is clear that Clara cannot bring a claim for legal malpractice or breach of fiduciary duty.[4] "[T]he existence of an attorney-client relationship between the plaintiff and the attorney" is a required element of any legal malpractice case. Rose v. Summers, Compton, Wells & Hamburg, P.C. , 887 S.W.2d 683, 686 (Mo. App. E.D. 1994). With limited exception,[5] the attorney "owes no actionable duty to strangers or non-parties to the attorney-client relationship in the way legal responsibilities are performed." Fox v. White , 215 S.W.3d 257, 260 (Mo. App. W.D. 2007). The elements necessary to establish a claim of legal malpractice are: "(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; (4) damages to the plaintiff." Klemme , 941 S.W.2d at 495. In Fox , this court found that, although the defendant's stepfather paid attorney to represent his stepson in a criminal proceeding and stepfather would have "benefited" from his stepson's acquittal, stepfather could not bring a claim for malpractice because he had no attorney-client relationship with attorney. Fox , 215 S.W.3d at 261-62. "[T]he mere payment of fees, without more, is not proof of an agency relationship, much less an attorney-client relationship." Id. at 261.
The engagement letter sent by Partee to George forming the alleged contractual relationship was solely for the representation of George. George and Partee *870 were the only signatories to the letter. George was the only one who was a party to the Rule 29.15 proceeding on which Partee was hired to work. Generally, an individual must be a party to a contract or a third-party beneficiary in order to have standing to enforce the agreement. General Motors Acceptance Corp. v. Windsor Grp., Inc. , 2 S.W.3d 836, 839 (Mo. App. E.D. 1999). "Only those third parties for whose primary benefit the contracting parties intended to make the contract may sue on the contract ... [and] the terms of the contract must clearly express an intent to benefit the third party." In re Scott , 913 S.W.2d 104, 105 (Mo. App. E.D. 1995). Like in Fox , a family member, Clara, paid the fee to Partee but the payment did not establish an attorney-client relationship with Clara. Although the freeing of her brother would have "benefited" Clara, the contract was for the representation of George and not intended to confer a benefit onto Clara. Thus, Clara is unable to maintain an action against Partee for any of the claims brought in the Petition.
The trial court did not err in finding Clara had no standing to bring the claims for breach of contract, malpractice, or breach of fiduciary relationship because she was not a party to the contract between Partee and George, was not a third party beneficiary to that contract, and neither did she have an attorney-client relationship with Partee. The remainder of this opinion shall thus be dedicated to the remaining claims of George against Partee.
III.
George's second and third points on appeal allege that the trial court erred in dismissing their claims for malpractice and breach of fiduciary duty.[6]
George's brief outlines the elements of breach of fiduciary duty and legal malpractice and alleges that George's petition fully set forth those elements. As previously stated, a plaintiff seeking to recover for legal malpractice must establish "(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; (4) damages to the plaintiff." Fox, at 260. "A breach of fiduciary obligation is constructive fraud." Klemme , 941 S.W.2d at 495. "Whether characterized as breach of fiduciary duty or constructive fraud, the elements of such a claim are: (1) an attorney-client relationship; (2) breach of a fiduciary obligation by the attorney; (3) proximate causation; (4) damages to the client; (5) no other recognized tort encompasses the facts alleged." Id. at 496. It is the second and fifth elements that distinguish a breach of fiduciary claim from a legal malpractice action. Id. It is a claim for constructive fraud rather than one of negligence. Id.
The brief, however, fails to address that, when the claims are asserted in the context of post-conviction relief, the petition must also allege that the plaintiff is actually innocent of the underlying crime charged. Kuehne v. Hogan , 321 S.W.3d 337 (Mo. App. W.D. 2010). In Kuehne , this Court, in part relying on the rational of other jurisdictions held:
We similarly find that the public policy concerns underlying the actual innocence requirement in the context of a malpractice suit against a criminal trial attorney apply equally to cases involving *871 a criminal defendant's post-conviction counsel. Therefore, Kuehne's innocence of the criminal charges for which he was convicted is essential to satisfy the causation element of his claim. Although Kuehne asserted in his petition that he is an innocent man, his allegation is merely a bare conclusion without factual support. The fact of his guilt was previously determined when he was convicted of the criminal charges, and Kuehne is therefore barred from asserting a collateral civil claim where actual innocence is an essential element.
Kuehne , 321 S.W.3d at 342. The same result was reached in Costa v. Allen , 323 S.W.3d 383 (Mo. App. W.D. 2010). In Costa , the client sought to bring claims for breach of fiduciary duty and fraud against his post-conviction counsel. Id. at 384. Costa alleged that his counsel failed to follow Costa's instructions in securing the testimony of certain witnesses. Id. The court found that "despite Costa's use of the phrase 'breach of fiduciary duty' and 'constructive fraud,' [the case] is essentially a malpractice action that seeks to retry the criminal case, regardless of how the pleader wishes to describe the claim." Id. at 386. "The same public policy principles should apply whether the assertion is [ ]titled 'breach of fiduciary duty' or 'professional negligence.' To rule otherwise would be to undermine the state's interest in not allowing the guilty to escape punishment in that it would allow the actually guilty to transfer all or part of the punishment to another." Id. at 387. The court goes on to again find that, without a claim of actual innocence, a convicted criminal client cannot recover civil damages against his attorney.
We find that these cases fully dispose of George's claims for breach of fiduciary duty and malpractice. Both claims are civil claims that seek to obtain money damages against Partee for what are essentially malpractice claims. George does not attempt to distinguish this case law or otherwise argue it is inapplicable to this case. We therefore find that the circuit court did not err in dismissing George's claims for malpractice and breach of fiduciary duty against Partee.
IV.
Finally, George's first point on appeal alleges that the circuit court erred in granting Partee's motion because it was contrary to the law. Specifically, George argues that the circuit court failed to find that there was not a contract between George and Partee and the court further failed to find that George would be unable to demonstrate a breach of such a contract.
George's claim for breach of contract against Partee is that he failed to obtain oral argument in his case before this court. "A client may sue an attorney when the attorney fails to follow instructions or fails in the attorney's obligations as the client's agent. This action is for the attorney's breach of contract. It is not predicated on a lack of legal expertise. It is based on the law of contract and agency, not on negligence." 34 Mo. Prac. Personal Injury and Torts s. 11:10; See Jarnagin v. Terry, 807 S.W.2d 190 (Mo. App. W.D. 1991). "The essential elements of a breach of contract action include: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Martha's Hands, LLC v. Rothman , 328 S.W.3d 474, 479 (Mo. App. E.D. 2010).
The engagement letter outlining the terms of the agreement were included by the Fullers in their original petition. Additionally, in his own Motion to Dismiss, Partee admits that he entered into a contract with George for "among other things, *872 all research and preparation of Mr. Fuller's Brief, and oral argument in the Western District." (emphasis added). It is undisputed that Clara delivered $6,000 to Partee on George's behalf, thus satisfying George's obligations under the contract. It is further undisputed that Partee did not request or present oral argument to this Court although oral argument was a service contracted for under the agreement and a request affirmed by the Fullers. Although George cannot obtain damages as a direct result of his crimes, as discussed fully above, we believe he can obtain damages for amount paid for a service that he did not receive.
Missouri has yet to address when a criminal defendant can obtain damages for a specifically contracted for service which was not rendered by his defense counsel under a claim for breach of contract. Other states have faced this question. In California, the court found that, as with a malpractice claim, a criminal defendant cannot bring a claim for breach of contract against their attorney unless they can show actual innocence. Lynch v. Warwick , 95 Cal. App. 4th 267, 275, 115 Cal.Rptr.2d 391 (Cal. Ct. App. 2002). We are, however, more persuaded by the dissenting opinion in Lynch . In Lynch , the convicted defendant in his breach of contract claim sought only to recover the money he had paid to retain counsel for services not rendered in the criminal matter. Id. at 277-78, 115 Cal.Rptr.2d 391. Thus the focus is not on the unfavorable outcome of trial but specifically for services contracted for but not rendered. Further, there are a number of policy reasons for not allowing a criminal defendant to recover for malpractice including: (1) not allowing a criminal to profit from his or her crime; (2) preventing the shifting of blame for guilt; (3) undermining the system of justice; and (4) avoiding a retrial of the case. Id. at 278, 115 Cal.Rptr.2d 391. Where the claim is solely for services contracted for but not rendered under a contractual breach, none of these policy concerns are at issue. See also, Owens v. Harrison , 120 Wash.App. 909, 86 P.3d 1266, 1269-70 (2004) (drawing a distinction between a breach of contract claim brought against an attorney for failure to perform any service, or failure to perform a "specific term of the contract" and a claim brought because defendant was dissatisfied with the outcome of the trial). But see, Van Polen v. Wisch , 23 S.W.3d 510, 515-16 (Tx. Ct. App. 2000) (finding that, just as with malpractice claims, criminal defendants cannot bring a claim for breach of contract against their attorney unless they can show actual innocence).
We hasten to note that this is an unusual case in which George had a contract clearly listing certain legal services that would be provided and has alleged that one of those services was not provided without his consent. This is not a generalized claim that his attorney breached his contract by providing unsatisfactory representation which is merely a legal malpractice claim repackaged. See generally , Gill v. Blau , 234 A.D.2d 506, 507, 651 N.Y.S.2d 182 (1996).[7] Because George makes no claims of actual innocence, his damages are still limited to the recovery of any amounts paid for the specific services which were specifically contracted for but undelivered. We find that the trial court did err in granting Partee dismissal of George's claim for breach of contract.
Conclusion
For the reasons stated above we affirm the circuit court's dismissal of all claims *873 brought by the Fullers against Fox, all claims brought by Clara against Partee, and the dismissal of George's claims for malpractice and breach of fiduciary duty against Partee. We, however, reverse the court's dismissal of George's claim against Partee for breach of contract and remand for further proceedings consistent with this opinion.
All concur

The facts set forth are taken from the petition filed in the trial court and for purposes of this appeal we presume them to be true. Dujakovich v. Carnahan , 370 S.W.3d 574, 577 (Mo. banc 2012).

The initial "Petition" was filed as a motion. The Fullers then submitted various amendments to the "Petition" asserting various claims against various parties. For brevity, we only address the claims in the final Amended Petition filed on March 23, 2015.

Point Relied On V is specifically addressed to the Fullers' claims regarding Clara as a third-party beneficiary but this discussion relates to her right to bring any of the claims filed in the Amended Petition, implicating all points on appeal and fully disposing of Clara's rights in this case.

"A breach of a fiduciary obligation is constructive fraud." Klemme v. Best , 941 S.W.2d 493, 495 (Mo. banc 1997). "Whether characterized as breach of fiduciary duty or constructive fraud, the elements of such a claim are: (1) an attorney-client relationship; (2) breach of a fiduciary obligation by the attorney; (3) proximate causation; (4) damages to the client; (5) no other recognized tort encompasses the facts alleged." Id. at 496. It is the second and fifth elements that distinguish a breach of fiduciary claim from a legal malpractice action. Id.

These exceptions have been limited to intentional torts. Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co. , 931 S.W.2d 166 (Mo. App. W.D. 1996). No intentional torts are alleged in the petition in this action.

The Fullers additionally raise a claim in their Point Relied on IV that the circuit court erred in failing to make specific findings of fact regarding a claim of Fraud. Fraud was not a claim brought in the Amended Petition. The Fullers' arguments as they relate to fraud have been incorporated into the relevant discussion for the claims actually brought in the petition; legal malpractice, breach of fiduciary duty, and breach of contract, infra.

Also, we note that Partee makes no argument that performance was impossible or that George otherwise agreed to waive argument.